## Dickinson's Estate.

Argued April 26, 1935. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Jerome J. Rothschild,* of *Fox, Rothschild, O'Brien &
Frankel,* for appellants, Nos. 257-259.

*John A. Boyle,* for appellant, No. 261.

*Joseph H. Grubb, Jr., Palmer Watson* and *Frederick
C. Newbourg, Jr.,* for appellee, were not heard.

PER CURIAM, June 29, 1935:
These five appeals are by remaindermen to whom dis-
tribution has been ordered. They involve the same ques-

tions, and will be disposed of in one opinion. The great bulk of the balance for distribution consists of shares of the capital stock of the Fire Association of Philadelphia, which security has always been the principal investment of the estate since inauguration of the trust over thirty years ago. Alleging the shares should have been disposed of in 1928, appellants sought to impose a surcharge upon the fiduciary; from the decree refusing their requests and awarding the shares in kind to the respective cestuis que trust, the present appeals were taken.

In a previous appeal (Dickinson's Est., 285 Pa. 449) we were called upon to allocate a stock dividend between principal and income. To the facts as therein recounted, it is only necessary to add that the fiduciary continued to retain the investment until the death of the life tenant in 1932, whereupon the trust terminated and the present account was filed. In the intervening years rights to subscribe for additional shares were issued to stockholders (which the fiduciary exercised); and the capital structure was twice revised. Cash dividends have been paid annually, albeit in decreasing amounts. The formation of a subsidiary company to enter the indemnity business proved an unfortunate venture, which, together with the general economic depression, accounts for the drastic decline in the market value of the shares.

Appellants concede the trustee was empowered, under the terms of settlor's will, to retain this nonlegal investment. Likewise is it admitted the trustee devoted its attention to the question of retention or disposal of the shares; nor is there any charge of bad faith. The remaindermen insist their quarrel is not with the lower court's statement of the duties which the law imposes upon trustees in the management of estates and therefore boldly assert that no legal question is involved. Rather is it urged that the surcharge must be imposed on equitable grounds because of the trustee's "unintelligent" conclusions, notwithstanding its comprehensive investigation of the problems presented. The beneficiaries character-

ize the fiduciary's retention of the shares as "folly, in absolute defiance not only of all sound investment policy but of actual experience."

It is unnecessary to recite in detail the many factors and attending circumstances, which, in our opinion, conclusively establish the care and attention afforded this estate by the trustee. In the light of the background thus presented, after a thorough study of the record, we find it impossible to charge this fiduciary with improper management of the estate. The law is clear that where (as here) a trustee is authorized to retain the settlor's nonlegal investments, and in so doing exercises reasonable skill, prudence and caution in the management of the estate and is guilty of no bad faith, no surcharge will be imposed. The power to retain nonlegal investments having been granted, such securities may be retained by fiduciaries "unless facts known to them, or which by ordinary watchfulness could have been known to them, rendered the holding of such securities an act of which it is inconceivable that one desiring to do his duty would, in the exercise of 'ordinarily good business judgment or foresight,' have been guilty": Linnard's Est., 299 Pa. 32, 37.

Of the trustee's diligence, care and caution, we are convinced; its sound contemporary judgment cannot now be impeached and a surcharge imposed because of its lack of omnipotent vision and prophetic foresight.

Decree affirmed at appellants' costs.