## Donovan's Estate

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*Saul, Ewing, Remick & Saul,* for petitioners.

*Morgan, Lewis & Bockius,* and *Pepper, Bodine, Stokes & Schoch,* for intervenor.

*Henry S. Drinker, Jr.,* amicus curiæ.

*Lloyd J. Schumacker,* guardian ad litem.

BOK, J., February 11, 1937.—This is the companion case to Carwithen's Estate, 28 D. & C. 66, in which an opinion has been filed simultaneously with this one.

We have decided to grant the petition for a declaratory judgment for the same reasons as are set forth in the Carwithen case, and the general question here is the same, save that we are dealing with the word "securities" and must interpret a different will.

William E. Donovan died on October 29, 1908, leaving a will dated July 13, 1908, whereby, after making various specific legacies to members of his family, he provided for three trusts. The first was $10,000 for the benefit of his sister, Louise Donovan, for her life, and the second was $5,000 for the benefit of Anna R. Leberman for her life, the principal to fall into residue after the death of the life tenants. The pertinent wording is the same in each of these two trusts. It reads:

"In Trust, to invest, reinvest and keep invested the principal thereof in safe, sound and substantial securities, without confining them to technical legal securities", etc.

Donovan then left the residue of his estate in trust for the benefit of his wife for life, and after her death to pay the income in equal shares to his three daughters for their lives, the issue of a deceased daughter to take the parent's share of income, and, on the death of the last surviving daughter, to pay the principal per stirpes to living issue. The pertinent wording of this trust is as follows:

"In Trust, to invest, reinvest and keep invested the principal thereof in safe, sound and substantial securities, according to their best judgment and discretion, without confining my said trustees to what are technically known as legal investments", etc.

It appears from the record that the widow died on September 23, 1933. We are not asked to construe the wording of the trusts in favor of Louise Donovan and Anna R. Leberman, and have not been informed whether these trusts are still effective; as the principal falls into residue after the life estates, it will ultimately be subject to our ruling on the wording of the residuary trust.

The parties in interest directly affected by these proceedings are three daughters, one of whom has children. Possible unborn children are represented by a guardian ad litem.

It appears that Donovan died leaving certain real estate and a personal estate worth about $384,000. The personal estate consisted of $293,123.33 in cash, the business of C. Moore & Co., of which decedent was proprietor, valued at $71,510.34, and the balance composed of various kinds of stock in an English or Canadian linen thread company, 50 shares of a Philadelphia trust company, 1,000 shares in a worthless Colorado milling and tunnel company, and the surrender value of several fire insurance policies.

The wording of the will shows a clear intention to provide for testator's immediate family. This system of distribution is in itself a mandate so to invest the funds as to achieve a secure principal and an income commensurate with it. Testator gives his trustees full discretion and relieves them of the necessity of investing in legals: they are not to be confined to what are "technically" known as legal investments. We feel that this frees them completely from the provisions of the act.

Testator has made a positive direction that his trustees shall invest in "safe, sound and substantial securities". Coupled with discretion given them, the words "safe, sound and substantial" emphasize the duty to observe the established rule of due care and prudence in making whatever investments the will as a whole and the law permit them to make.

The will says that they may invest in "securities", and we are asked to decide whether this word includes common and preferred stocks.

In the trusts to his sister Louise and Anna Leberman testator's wording is identical, but it differs slightly from that relating to the residuary trust. The difference occurs in the phrasing following the words "without confining them"; in the two smaller trusts the sequence is, "technical legal securities", and in the residuary trust it is, "to what are technically known as legal investments". In our opinion the latter phrase is an amplification of the former, an effort to be even more specific in the case of the largest and final trust, and does not indicate a different intention. As the two smaller trusts are to fall into the residue and become part of the residuary trust, it is unlikely that testator intended that his trustees, who are the same in all three trusts, should be freer in their management of the two small trusts than of the residuary trust. We read the wording of the three trusts together, in order to determine testator's general intent as to the investment powers which he meant his trustees to have.

When the man in the street speaks of his securities he means his stocks as well as his bonds. The definition of the word "security" in Webster's New International Dictionary (2d ed.) is sufficient authority for this:

"An evidence of debt or of property, as a bond, *stock certificate*, or other instrument, etc.; a document giving the holder the right to demand and receive property not in his possession." (Italics ours.)

Our Supreme Court has used the word in this sense in so many cases that we need cite only a few as examples. (All italics are ours.)

In Barton's Estate, 1 Pars. Sel. Eq. Cas. 24, decided in 1842, the court said:

". . . the Schuylkill Bank stock and Lehigh loan were *securities* selected by the testatrix herself, being part of the very estate which came into the possession of the trustee as her executor."

In Pray's Appeals, 34 Pa. 100, the court referred to Barton's Estate, supra, saying:

"There, at the time of the investment, the stock and loans were valuable paying securities".

In Stewart's Appeal, 110 Pa. 410, the court said:

"We see no reason for surcharging the accountant with the loss sustained in the sale of the Pennsylvania and Reading Railroad stock. They were *securities* which the testator had himself purchased and held up to the time of his death. They were both dividend-paying *securities* and so continued for several years after the testator's death."

In Brown's Estate, 287 Pa. 499, 502, involving the right of trustees to retain stocks, the court says: "They need not rush into a conversion of the *securities* left by the decedent."

In Crawford's Estate, 293 Pa. 570 (1928), testatrix directed her trustees to set aside and hold a fund "out of stocks and bonds belonging to me at their market value at the time of my death", in trust for her granddaughter. The late Justice Walling said, page 575:

"As the testatrix provided these specific *securities* to form the trusts, it is of no importance that they are not what is known as legal securities. The terms of the will protect the trustees. Where the will expressly directs the executors to set up trusts out of *nonlegal securities* held by the testator, the rule stated in Taylor's Est., 277 Pa. 518, against trustees investing in such *securities*, is not applicable. See Detre's Estate, 273 Pa. 341. The estate has a large amount of *securities* in addition to those called for in items five and six."

In Macfarlane's Estate, 317 Pa. 377, the court refers to certain named common and preferred stocks as "these securities".

In Dickinson's Estate, 318 Pa. 561, the question involved the retention of stock in the Fire Association of Philadelphia. The court uses this language:

"The power to retain nonlegal investments having been granted, such *securities* may be retained by fiduciaries 'unless facts known to them, or which by ordinary watchfulness could have been known to them, rendered the holding of such *securities* an act of which it is inconceivable that one desiring to do his duty would, in the exercise of "ordinarily good business judgment or foresight", have been guilty': Linnard's Est., 299 Pa. 32, 37." (Italics ours.)

See also Gardner's Estate, 323 Pa. 229, in which common stocks retained by the fiduciary are directly referred to as securities at least half a dozen times in the opinion.

In Kelch's Estate, 21 D. & C. 204, 208, Judge Stearne, as auditing judge, said:

"As appears hereinbefore, the trustees retained one *security* for approximately 13 years and then sold at a substantial loss. They have retained the other *securities*, as set forth above, for a period of approximately 24 years, and still retain them as part of the trust. They are traction company *stocks*, commonly known as 'underliers'. The present market quotations reveal a tremendous de-

preciation. Claim is made to surcharge the trustees for this potential loss." (Italics ours.)

In Edwards' Estate, 6 D. & C. 121, 123, the late Judge Gest, in his adjudication, said:

"The *securities* owned by the testator at the time of his decease on Aug. 15, 1902, the date of his last codicil being the preceding March 19th, were all *corporate stocks* and bonds. (Italics ours.)

In Davis' Estate, 1 D. & C. 61, the late Judge Henderson held that an account on the books of a land company was a security where testator gave to his trustees all his "stocks, bonds and other corporate securities", since the word was used as synonymous with "investment".

Similar use of the word is found in the A. L. I. Restatement of Trusts, sec. 190*d*:

"Hence, if the trustee receives as part of the trust property speculative *securities* or *securities* which are otherwise not proper trust investments, he ordinarily has the power as well as the duty to sell them in order to make the preservation of the property reasonably certain (see §§230, 231). . . . The retention of speculative or unproductive *securities* may, however, be authorized or directed by the terms of the trust." (Italics ours.)

Under section 227, dealing with investments which a trustee can properly make, we find this comment on clause (*a*) of section (*u*), page 657:

"A provision in the terms of the trust authorizing the trustee to invest in '*securities*' is ordinarily interpreted as broad enough to include not merely secured obligations but also other investments such as shares of stock or debentures. An authorization to invest in securities, however, does not of itself empower the trustee to make an investment which would not be made by a prudent man dealing with his own property and having primarily in view the preservation of the trust estate and the amount and regularity of the income to be derived."

Section 193, "Powers with Respect to Shares of Stock", provides:

"Unless it is otherwise provided by the terms of the trust, the trustee of *shares of stock or other securities* can properly vote and exercise the other powers of holders of such *shares or other securities.*" (Italics ours.)

See also similar use of the term "securities", in comments (*c*), (*d*), and (*e*) under this section.

Section 227, "Investments Which a Trustee Can Properly Make", provides, at page 648, second paragraph, comment (*f*):

"Unless it is otherwise provided by the terms of the trust, the following are not proper trust investments: (1) purchase of *securities* for purposes of speculation, for example, purchase of shares of stock on margin." (Italics ours.)

Page 658, comment (*w*), provides:

"If by the terms of the trust the trustee is authorized or directed to invest in a particular *security* or a particular type of *security*, he may nevertheless be liable for making such an investment under the rules stated in §167. . . . Thus, where by the terms of the trust the trustee was authorized to invest in *shares* of a particular company which at the time of the creation of the trust was in sound financial condition but which has since fallen into such financial difficulties that the shares have become highly speculative, the trustee is subject to liability if he invests in these shares." (Italics ours.)

The following are examples in various acts of the Pennsylvania legislature where the word has been used in its popular sense:

Fiduciaries Act of June 7, 1917, P. L. 447, 516, sec. 49(*e*) 1, 20 PS §§865, 866:

"(e) 1. Whenever it shall appear, at the audit and distribution of an estate in the orphans' court, that the balance, after payment of debts, includes *stocks, bonds, or other securities,* which, for reasons satisfactory to said court, have not been converted by the accountants, it shall be lawful for said court to direct distribution of such as-

sets in kind, to and among those lawfully entitled thereto, including fiduciaries.

"2. Where *stocks, bonds, or other securities* have been distributed in kind, as above provided, to any fiduciary, it shall be the duty of such fiduciary to use reasonable diligence in converting *such securities* as shall not be investments now or hereafter authorized by law; and, if such fiduciary be doubtful as to the propriety of making sale of *such securities,* he may apply to the orphans' court having jurisdiction of his accounts." (Italics ours.)

Act of March 29, 1927, P. L. 73, sec. 1, 56 PS §511:

"(a) The term *'security receipt'* means any writing in and by which the signer sets forth that the person named therein, or the bearer, is entitled to receive a specified principal amount, par value, or number, of bonds, notes, debentures, *shares of stock,* equipment trust certificates, voting trust certificates of shares of stock, scrip, *or other security or securities* of any kind or character identified or described therein, absolutely". (Italics ours.)

The Public Service Company Law of July 26, 1913, P. L. 1374, art. III, sec. 4, as amended by the Act of June 3, 1933, P. L. 1526, 1530, sec. 4, 66 PS §201, definition of "securities":

"(a) To issue *stocks,* trust certificates, bonds, notes, or other evidences of indebtedness *or other securities,* payable in periods of twelve months or more after the date thereof, and now or hereafter to be authorized, hereinafter collectively termed *'securities',* in the manner prescribed by law, for and only for money, labor done, or money or property actually received, in accordance with the requirements of the Constitution and the laws of the Commonwealth." (Italics ours.)

The Securities Act of April 13, 1927, P. L. 273, sec. 2, amended, but not as to section 2, by Act of May 8, 1929, P. L. 1659, sec. 1, 70 PS §2(a):

"(a) The terms *'security'* or *'securities'* shall include any bond, *stock certificate* under a voting trust agreement, *treasury stock,* note, debenture, certificate in or

under a profit-sharing or participation agreement, subscription or reorganization certificate, oil, gas or mining lease or certificate of any interest in or under the same, evidence of indebtedness, or any certificate or *instrument representing or secured by an interest in the capital, assets or property of any corporation,* unincorporated organization, association, trust, or public corporation or body, or any other instrument *commonly known as a security.*" (Italics ours.)

The following are examples to the same effect found in acts of Congress:

Acts of February 4, 1887, 24 Stat. at L. 379, February 28, 1920, 41 Stat. at L. 494, sec. 439:

"(2) . . . It shall be unlawful for any carrier to issue any share of *capital stock* or any bond or other evidence of interest in or indebtedness of the carrier (hereinafter in this section collectively termed 'securities')".

The Securities Act of May 27, 1933, 48 Stat. at L. 74, sec. 2:

"When used in this title, unless the context otherwise requires—

(1) The term *'security'* means any note, *stock* . . . transferable share . . . or, in general, any instrument *commonly known as a 'security'* ". (Italics ours.)

The Securities Exchange Act of June 6, 1934, 48 Stat. at L. 881, sec. 3 (10):

The term *'security'* means any note, *stock* . . . transferable share . . . or in general, any instrument *commonly known as a 'security'* ". (Italics ours.)

The National Stolen Property Act of May 22, 1934, 48 Stat. at L. 794, sec. 2(*b*):

"The term *'securities'* shall include any note, *stock certificate,* bond . . . transferable share . . . or, in general, any instrument *commonly known as a 'security'* ". (Italics ours.)

The following cases in other jurisdictions show that the word "securities" has received judicial sanction in its popular meaning:

In Fox v. Harris et al., 141 Md. 495, the trustees were given the following power of investment:

"They shall have full power to sell or dispose of all my property, real, personal and mixed, and to invest and reinvest the proceeds arising therefrom in good, safe *securities.*"

They invested, inter alia, in certain corporate stocks, for which investment one of the life tenants sought to surcharge them. The lower court refused the surcharge, and this was affirmed by the Court of Appeals, which held that the power of investment was a discretionary one, that the trustees were not confined to legal investments, and that there had been no dishonesty or negligence in making the investments. The court disposed of the life tenant's argument, that stocks were not securities within the above-quoted language used by testator, as follows, page 504:

"We are not impressed by the contention of appellant that stocks are not securities within the meaning of the language used by the testator. They have been recognized as securities both by the Legislature and by the Court. Code, art. 93, sec. 242; *Gray v. Lynch, supra; McCoy v. Horwitz, supra.*"

In Irving Trust Co., etc., v. Natica, Lady Lister-Kaye et al., 157 Misc. 32, 35, under a trust inter vivos the trustee was empowered:

". . . *to invest the proceeds in real estate or in bonds secured by mortgage upon real estate in the State of New York or elsewhere or in bonds or preferred stock of railroads approved by the Trustee and Harry B. Hollins of the City of New York, or in such other personal securities as may be approved by them as investments.*"

The trustee invested in certain preferred stock. The life tenant objected to this at the present accounting on the ground that the stock was not within the power of investment. This contention was rejected by the referee appointed by the Supreme Court to audit the account, who said:

"The reasoning of the objectants as to what is meant by 'personal securities' appears to me most strained. I can find no authority holding that such expression is intended to authorize investment only in corporate or individual notes secured by pledge or common stock certificates and does not authorize investment in common or other stocks. The objectants have not submitted any authority supporting their contention.

"On the other hand, while I have found no authorities specifically defining the expression 'personal securities', the meaning of the word 'securities' has been passed upon freely and is no different from that employed by ordinary laymen in using the word. (*Contracts, Restatement*, §*235* [c]; (*italics ours*) *Rosenthal v. American Bonding Co.*, 207 N. Y. 162)."

In In re Vanderbilt's Estate, 132 Misc. 150, the Surrogate's Court of New York County, upon audit of a trustees' account, sought to surcharge the trustees, inter alia, for accepting and retaining certain shares of stock left by testator. The eleventh paragraph of the will provided:

"I give and bequeath to my said executors . . . Twenty million dollars in securities held by me at the time of my death, to be selected out of my estate and set apart at their market value by my said executors".

Surrogate Foley held that the will clearly showed testator intended the trustees to take over and retain the stocks and dismissed the claim for surcharge, saying, page 154:

"I can discover in the will no support for the contention of the general guardian that by the use of the word 'securities' in article 'eleventh', the testator intended that his executors and trustees should have rejected shares of stock in the making up of the trusts, and included bonds only. The term cannot be construed as having been used by the testator in the sense of mortgage bonds or secured debts. In his direction for the formation of the trust, he must be deemed to have used the word 'securities' in the vocabulary of ordinary life and not in any technical or

narrow sense. In the general usage of speech employed by men of business affairs, the word 'securities' is used in its widest sense to describe the broad class of financial investments. As so employed it imports the inclusion of stocks—common and preferred—as well as secured investments. (See 25 Am. & Eng. Ency. of Law [2d ed.], 180; *Will of Stark*, 149 Wis. 631.) The Century Dictionary defines 'security' as 'evidence of debt or of property, as a bond or a certificate of stock.' Under the mandate of the will the trustees, therefore, properly included shares of stock in the trust."

In Will of Stark, 149 Wis. 631 (1912), testator gave his widow $25,000 cash or securities, at her election, "which securities, if such she takes in lieu of cash, shall be of said amount of $25,000 *at par value*." The widow having elected to take the above provisions in bank stock, the question whether bank stocks and other corporate stocks owned by testator were "securities" within the meaning of the fourth item was submitted to the lower court, which held that they were. This was affirmed, Chief Justice Winslow saying, at page 657:

"We think the trial court was right upon both these questions. While the word 'securities', construed strictly, does not cover corporate stock, but rather bonds or evidences of debt, it has undoubtedly acquired a much broader meaning by general usage. It is said in 25 Am. & Eng. Ency. of Law (2d ed.) at page 180, 'The term in its broadest sense embraces bonds, certificates of stock, promissory notes, bills of exchange, etc.' The Century Dictionary defines 'securities' as 'evidences of debt, or of property, as a bond or certificate of stock.' See 1 Cook, Corp. (6th ed.) secs. 14 and 305, to the same effect. Indeed it may be said, we think, to be matter of common knowledge that the word is generally used in this broad sense."

In Boston Railroad Holding Co. v. Commonwealth, 215 Mass. 493 (1913), there was a petition for abatement of a portion of the franchise tax. Petitioner contended, inter

alia, that cash in bank was within the meaning of the word "securities", in the wording of the statute. The court said, at page 496:

"Neither do we think that it is included in the term 'securities'. It is not like money on deposit in a savings bank which is represented by a book containing the contract between the depositor and the bank which may be fairly said to be a security. In its ordinary acceptation the word *'securities' includes bonds, certificates of stock* or of deposit, notes, bills of exchange and other evidences of indebtedness or of property, and not mere choses in action (25 Am. & Eng. Ency. of Law, 180; 35 Cyc. 1283, n. 59) ; and it is to be noted that the statute, in declaring what personal estate shall include for the purpose of taxation, couples together 'public stocks and securities', but classes by itself 'money at interest' and 'money.' " (Italics ours.)

The above language was quoted with approval in J. S. Lang Engineering Co. v. Commonwealth, 231 Mass. 367 (1918).

It is clear from the above authorities that the word "securities" has acquired a common meaning of its own which includes stocks, and we are of opinion that testator has used it in this sense. The difference between this view and that of the minority is that we think testator used a familiar word in its familiar meaning, whereas the minority interprets testator's words in the light of the general policy of the law with regard to trust investments. This is done in the face of the express declaration of testator that he frees his trustees from the constraint of the policy of the law.

The guardian ad litem, who also appeared in that capacity in the Carwithen case, has made the same contention here: that the law imposes a restriction on the trustees' discretion as regards corporate stocks, independent of the language of the will. In the interest of brevity, we do not repeat our answer to that contention, but we incorporate here the sections of our opinion in the

Carwithen case which discuss and decide this point. The two opinions should be read together, for, except that different wills are involved, the general legal questions of both cases coincide.

We therefore hold:

1. The trustees of the Donovan will are relieved of the restrictions of the Legal Investment Act.

2. Dealing in common and preferred stocks of corporations is included within the exercise of discretion given in the will.

3. The word "securities", as used in the will, includes such stock.

4. There is no principle or rule of law, independent of the will, which prevents their dealing in such stocks.

5. The exercise of their discretion is subject to strict review by this court and will be measured by the established standards of common care, common caution and common prudence.

## Dissenting opinions

SINKLER, J., dissenting.—With the conclusion of the majority and the grounds upon which it is based we do not agree, for the following reasons:

The term "security" used in its relation to the investment of trust funds in this State should be judicially construed not according to the vernacular use but in its accurate sense. So construed the term "security" does not include shares of stock in a corporation as a class.

We are not concerned at this time with the relative merits of a certain form of legal investment for trust funds, to wit, mortgages in contrast with shares of common stock. The question is solely whether shares of common stock as a class have the attributes which compose the elements of safety and certainty necessary to constitute a security, when the power to invest trust funds is construed.

Authority to invest in "safe, sound and substantial

securities" does not empower a trustee to invest in shares of common stock.

The Constitution of this State contains provisions which limit the investment of trust funds to the specified classes. If any doubt existed as to the intention of the framers of our Constitution it would be dissolved by reading the debates on this subject preceding its adoption. The substance is to be found in a recent adjudication of this court.[1] The legislative intent is manifest from a reading of the statutes. The courts of this State have been consistent in construing strictly any grant of authority giving latitude in investment by trustees otherwise than as prescribed by the Constitution and statutes. For example, a case frequently cited and followed [2] in effect defines good securities as legal investments for trust funds. Throughout in our Constitution, statutes, and judicial decisions, the aim is to safeguard the investment of trust funds by restricting the trustee to what may be broadly described as the position of creditor rather than that of owner or partner.

In order to reach our conclusion respecting the pertinent clauses of the will before us for consideration, analysis must be made of the attributes of what is properly called a security and the quality of shares of stock. If the former involve requirements lacking in the latter, and, if the latter have elements which are not consistent with the requirement of the former, then shares of stock are not securities.

A well-recognized authority says:

"Corporate shares have also been classed as 'securities', and, although they may be thus designated within the meaning of particular statutes, yet it is plain that they are not securities in the proper sense of the word." [3]

Analysis of elements composing a security and certain incidents to ownership of corporate shares corroborates this pronouncement. Such analysis is predicated upon the following: "Security" must be interpreted in its restricted and accurate sense when the word is used in relation to the investment of trust funds, in like manner as

the grant of power to purchase other than legal investments must be strictly construed. The inclusion of corporate shares for the purpose of a statute in respect of the issuance or taxation of the shares thereof is to be distinguished from such cases as the present. Likewise, judicial decisions are not authority wherein shares of common stock are referred to as securities, unless it be in construing the word in its strict sense and in such instances as the present.

The respective merits at this moment of shares of common stock and corporate bonds, mortgages and other like investments, are not involved in determining the question now before us. Our conclusions affect only the powers of investment by trustees in this State and are to be reached in the light of the policy of our legislature and courts alike.

An element of security is certainty as to the status of the investment. Whether it be secured by the lien of a first mortgage, or otherwise, certainty in this respect is essential. An issue of general mortgage bonds of a great railway system may be subject to the lien of prior mortgages of the obligor and to scores of issues made by constituent companies. Nevertheless the owner of the general mortgage bonds is assured of his status. The owner of shares of common stock has no such security. The corporate property may at the time he purchases his shares be free of lien or debt. Thereafter it may be encumbered by lien, subjected to other obligations created by the corporation or by judgments obtained against it for debts incurred in the operation of the corporate business. An excellent illustration is to be found in what actually occurred in the corporation in question. During the past 10 years obligations exceeding one hundred million dollars have been created, yet the status of the general mortgage bonds remains unchanged, while prior indebtedness to which the corporate property has been subjected, and the property rights of the stockholders have been affected to that extent.

Another incident of security is the covenant to pay a certain amount on a fixed date. This feature exists in a bond which matures at the expiration of a stated period, but is not present in shares of common stock, whether with par value or without.

If the security be a mortgage, covenants are to be found in the bond for the protection of the investor, the payment of taxes, maintenance of insurance against fire, and the like. If the security be a corporate bond, the indenture or deed of trust whereby it is secured usually contains numerous, sometimes elaborate, covenants to insure the certainty of the investor's status, the stability of his investment, the remedies in case of default in the performance of any covenant undertaken by the obligor.

As to income, certainty is likewise an attribute of a security. This is effected by a covenant to pay a fixed amount on stipulated dates. Dividends on shares of common stock are payable ordinarily if earned in amounts and at times determined by the discretion of a board of directors. This element of security is therefore lacking in shares of common stock.

The foregoing relates to elements of certainty usually present in certain forms of investments. Issues of bonds exist having no specified date of maturity, except, doubtless, in the event of default in some covenant. Likewise, corporate mortgages have been created wherein no limit has been fixed in the amount of bonds which may thereafter be issued. Also there exist what are known as income bonds, wherein no covenant exists for the payment of interest in an amount and at dates specified. Likewise issues of common stock may enjoy covenants on the part of the corporation's lessee for the payment of dividends at regular dates and amounts. What has been written immediately above as to the convergence of certain types of bonds and a small class of stock is not to be taken as a basis for holding shares of stock generally to be included as securities, but rather a ground for holding certain bonds to be lacking in the essentials thereof. Generally,

where the investor has the status of creditor and not that of owner, necessary elements of a security are present—that he be secured to a specified extent, that his status be certain, that the time and amount of the payment of both principal and interest be assured.

Certain features of a security are lacking in corporate shares. Certain attributes of such shares constitute insecurity. This appears from the findings in judicial decisions and in the comments contained in recognized authorities upon the subject of corporations.

The first concept of a corporation as an entity and the development of the concept arise from later Roman law. Thence the English common law adopted this artificial concept, and from this source spring the early American corporations. The theory of common-law partnership first appears in England during the seventeenth century: "The law of partnership rests on a foundation composed of three materials: the common law, the law of merchants, and the Roman law." [4] Corporations and partnerships thus not only trace their birth to common ancestors, but have more characteristics in common than is sometimes realized.

In this country the partnership, originally the most common form of business association, involved the disadvantage of individual liability for firm debts on the part of the partner. Therefore the corporation became more popular, and the joint stock association developed as a hybrid of the two. [5]

The Supreme Court of the United States has declared: "private corporations are but associations of individuals united for some common purpose, and permitted by the law to use a common name, and to change its members without a dissolution of the association"; [6] whereas the British Partnership Act (22 Halsbury 3) has defined a partnership to be: ". . . the relation which subsists between persons (a) carrying on a business in common with a view of profit".

The policy of our courts and legislature has become increasingly marked in prescribing rules curbing the corporate power, reducing the advantages of incorporation, and under increasing sets of circumstances "piercing the corporate veil". The original concept of a distinct corporate personality had become well-nigh unassailable. But today this fiction of corporate entity is disregarded whenever adherence thereto would cause gross miscarriage of justice.

". . . the courts, again and again, have frustrated each and every attempt to commit inequity, to perpetrate fraud, to achieve monopoly, or to accomplish wrongs, under the guise, and hiding behind the veil, of corporate existence. The refusal of the courts to allow quiddits and quillets to stand in the way of justice is nowhere better exemplified."[7]

When the fiction of corporate entity is disregarded the stockholders are transformed into quasi-partners.

The Supreme Court of the United States has refused to permit two corporations to use the corporate fiction to circumvent the prohibition of the Anti-Trust Law.[8] Cases in American jurisprudence wherein fiction of corporate entity is disregarded are to be found in growing numbers.

That the legislatures of the several States have recognized these principles is evident in the legislative determination to penetrate the corporate armor. Pennsylvania has long impressed on stockholders of a corporation the obligation to meet wage claims in the event of insolvency of their company. Similarly, it has until recently subscribed to the doctrine of double liability of stockholders in certain trust and banking corporate set-ups. Other States have adopted similar laws, and in some cases have gone further.[9]

A stockholder no longer enjoys the impregnable position that he once did. He is variously described as a "quasi partner in the enterprise", "a cestui que trust" or the principal in principal-agent relationship with the directors of the corporation.[10]

"A share of stock was once a fixed participation in property accompanied by a considerable degree of control over that property . . . today it is a participation stripped of many of its original protections and subject to indefinite variation"; "the distinctness of the property right has been blurred to the point of invisibility". "The stockholder has only a set of expectations that the men who compose the management and control will deal fairly with his interest".

Once owner of a property right, he has evolved into a supplier of capital in exchange for a bare expectation or hope.[11]

The views of these commentators indicate the presently uncertain status of a stockholder and a hazardous outlook for him. The conclusion to be reached from consideration thereof is that shares of stock are not now to be included as securities. We, the minority of the court, find this viewpoint as more modern and farseeing then the decisions upon the subject found in the majority opinion.

A shareholder is, according to prevalent opinion, as expressed in the authorities just cited, not a security holder. He is a joint owner of property, one of a group engaged in business, in some instances subject to liability like unto that of a partner. The present trend of judicial decisions seems toward making the lot of the shareholder one of increasing uncertainty rather than certainty.

Comment is made above upon the fact that corporate shares lack certain necessary elements of securities. Now we express the view that shares of common stock in turn have certain attributes foreign to those of securities.

A shareholder is a part owner of corporate property, his status is uncertain, insecure, unstable. An illustration is a recent occurrence wherein a stockholder in a corporation operating a plant for the manufacture of paper used for news print, through the will of the majority, became a part owner in a plant for the manufacture of craft paper in Mississippi through the sale of the corporate assets and purchase of other assets.

Through merger, if the majority will, the corporate property can be altered to a large extent. Another actual occurrence is where a stockholder, and therefore a part owner, of a plant for the manufacture of special steel products in Ohio, through merger, became a stockholder in a vastly larger corporation owning plants for the manufacture of ships as well as almost every known form of steel product in several States.

The precise question in construing the will before us is this: Does authority to invest "in safe, sound and substantial securities without confining them to technical legal securities" confer power to invest in shares of common stock? More briefly, are such shares included in the category safe, sound, substantial securities. The applicable canon of construction above related is that latitude in investment of trust funds must be expressed in unequivocal terms. The answer to the question before us is an emphatic negative. Power to invest in safe, sound, and substantial securities is not clear and unmistakable authority to invest in shares of common stock. We, the minority of this court, go farther: the phrase quoted gives no such authority whatsoever, and shares of common stock are not as a class safe, sound and substantial securities.

We are urged to find that testator used the words "safe, sound and substantial securities" in their colloquial sense. The will as a whole is artificially drawn, in legal phraseology. The words following those just quoted, "what are technically known as legal investments", indicate knowledge of the exact nature of legal investments. Having used words of art elsewhere in his will he may not be held, in the use of the word "securities", to have lapsed into argot.

We do not maintain the view that trustees in Pennsylvania may not invest in shares of common stock. In our opinion they may do so if expressly thereto authorized, if given such power by unequivocal words, or by legislative enactment. Corporate shares are not as a class included

in the category of securities, according to our interpretation of both terms.

[1] Curran's Estate, 17 D. & C. 435.

[2] Plate's Estate, 30 Dist. R. 902.

[3] 5 Thompson on Corporations (2d ed.) §3467.

[4] 1 Collyer's Law of Partnership 1 (London 1840).

[5] Elliott on Private Corporations (5th ed.) secs. 11 to 20; Thompson on Corporations (2d ed.) secs. 7 et seq.

[6] United States v. Trinidad Coal & Coking Co., 137 U. S. 160, 169.

[7] Wormser on The Disregard of The Corporate Fiction and Allied Corporate Problems, p. 44.

[8] Northern Securities Co. v. United States, 193 U. S. 197.

[9] Elliott on Private Corporations (5th ed.) sec. 538 et seq.

[10] Berle and Means, "The Modern Corporation", pp. 275, 279.

[11] Berle and Means, "The Modern Corporation", pp. 152, 158.

STEARNE, J., dissenting.—I dissent from the opinion in this case, upon the same grounds as are set forth in my dissenting opinion in Carwithen's Estate, 28 D. & C. 66, this day filed, and which case is a companion case hereto, and concur in the dissenting opinion of Judge Sinkler.