In the Matter of JOHN T. ARMS et al., as Trustees of the LOUIS COMFORT TIFFANY FOUNDATION, Petitioners.

Supreme Court, Special Term, Kings County, July 17, 1946.

*Harold J. Baily* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (Corning G. McKennee* of counsel), for unknown beneficiaries.

C. A. JOHNSON, J. This is a proceeding brought by the trustees of the Louis Comfort Tiffany Foundation for permission to deviate from the terms of certain trust instruments and for other relief.

On July 30, 1918, Louis Comfort Tiffany formed the institution known as the "Louis Comfort Tiffany Foundation" by executing and delivering to the trustees named therein three instruments, as follows: (1) A trust deed of real property, being his residence and appurtenant buildings and some sixty-two acres of land at Laurelton, town of Oyster Bay, Nassau County, New York, pursuant to section 115 of the Real Property Law; (2) a trust deed of personal property consisting of preferred and common stocks therein enumerated, including eighty shares of the stock of Tiffany & Company, of a total value at that time of nearly $1,000,000, pursuant to section 14 of the Personal Property Law, and (3) a letter of instructions to the trustees.

In both the trust instruments, the settlor recited that he desired " to promote the public welfare by founding, endowing, and having maintained an educational institution within this

state by conveying to the trustees herein named, and to their successors," the real and personal property therein described. He further provided: " (1) The nature of the institution to be founded is an art institute, the object and purpose of which are art education directed toward both art appreciation and production, within the scope of the industrial as well as the fine arts, and as one means toward those educational purposes the establishment and maintenance of a museum to contain objects of art.

" (2) The name by which it shall be known is: Louis Comfort Tiffany Foundation.

" (3) The powers and duties of the trustees and the manner in which they shall account, are all the powers and duties of trustees of a membership corporation organized under the laws of the State of New York, subject only to such limitations upon such powers and duties as are herein expressly stated, and the manner in which they shall account is the same manner in which the trustees of such membership corporations are required to account, subject as aforesaid.

" (4) The mode and manner and by whom the successors to the trustees named herein are to be appointed is by election of the remaining trustees to fill any vacancy in their number, however created. The trustees hereby appointed may add to their number other trustees by the vote or written designation of a majority of them; may prescribe by the adoption of a constitution their respective terms of office and the manner in which their successors shall be elected or appointed. Trustees other than those herein named so elected and appointed, and successor trustees, shall have the same powers herein given to the original trustees named."

The settlor reserved, however, the right, during his lifetime, to approve such additional trustees and such constitution, and elected likewise, during his lifetime, to perform the duties and exercise the powers enjoined upon and vested in the trustees, but did not thereby prevent his devolving upon them any or all such powers and duties either permanently or from time to time. He likewise reserved the right during his lifetime to alter, amend, or modify the terms and conditions of the trust, and to absolute dominion over the rents, issues, and profits of the real and personal property conveyed to the trustees. He named seven trustees and appointed Robert W. de Forest and George F. Heydt, respectively, as secretary and treasurer of the trustees until they should organize and provide for the election or appointment of officers.

In his letter of instructions to the trustees accompanying the trust deeds the settlor said: "I have, by instruments of even date with this letter, given to you as trustees certain real and personal property therein described. I have done this pursuant to my intention of promoting the public welfare by this Foundation. Most of you know of my general plans from personal conference with me. I am relying upon you in the event of my death to carry them out."

After referring to the rights reserved to him during his lifetime, he further wrote: "Nevertheless, in the line of complete understanding, it is my wish and expectation that you will, by appropriate resolution, provide as follows:

"That only the income of the securities given to the Foundation shall be used for its support and maintenance; that the principal given, whether it continues to be invested in the securities I have transferred or is otherwise invested, shall always remain intact; that you have the power of investment and re-investment except as to the stock of Tiffany & Company; that the stock of Tiffany & Company during my lifetime, shall remain in my name, that I retain the right to vote thereon and that after my death no sale of the same shall be made until an option shall have been given to the then directors or trustees of Tiffany & Company by notice in writing to purchase the same either for themselves or for other then stockholders of Tiffany and Company, at any price at which it is proposed to sell, and that it shall not be sold to others until thirty days after the expiration of such option.

"If at any time it should seem desirable to the Trustees to obtain a charter from the Regents, or organize under the General Education Law, I wish them to have full power and authority to do so."

Messrs. de Forest and Heydt, named by the settlor as secretary and treasurer, respectively, of the trustees of the Foundation, accepted the grants and received and deposited the securities, and on September 12, 1918, the trustees met and formally approved and ratified their action.

Subsequent to the original grants, additional gifts were made to the Foundation by the settlor, and they also received gifts from Miss Louise Tiffany and Mr. Charles W. Gould. The trustees conducted the activities of the Foundation at Laurelton aforesaid in the buildings and upon the land conveyed to them by the settlor. Such activities were financed from the income of the securities given them by the settlor and others, which income was exempted from taxation, as was the real property,

upon the ground that the Foundation was an educational institution. The income was expended in the upkeep of buildings and grounds and in the conduct of a school on the premises for education of students in art, none of the income being applied to any other purpose, except payment of salaries to employees for services in effecting the objects of the Foundation.

The activities of the Foundation were conducted from May to October in each year. Students were selected by circularizing leading art schools for examples of work and for recommendations. A committee was chosen by the trustees which examined the work and recommendations submitted and chose those whose work was considered best. Those chosen were invited to the Foundation for the season. They received their board and lodging and were given all the facilities of the Foundation to work out their artistic problems. Those chosen were generally well advanced in their work and were permitted to continue along their own lines, subject to supervision and criticism by the resident director and visiting artists. The students were under no expense except for the material they used in their work. Exhibitions were held at which their work was shown and in the fall an annual exhibition was held in New York City, at which the best of the season's work was displayed.

In addition to the resident students, art teachers were permitted to bring their classes to the Foundation for sketching, etc., and the main building of the Foundation, containing objects of art, was open to inspection by those applying for the privilege. This privilege, however, as well as the choice of students and the manner of their selection, rested entirely in the discretion of the trustees.

Mr. Tiffany died on January 17, 1933. By his last will and testament and the several codicils thereto, he made additional gifts to the Foundation including additional stock of Tiffany & Company and the furniture and other contents of the Laurelton house.

Surrogate HOWELL of Nassau County, upon the settlement of the intermediate accounts of the executors of the will treated the Foundation as a valid charitable trust and held the testamentary gifts to be gifts to the trustees of the Foundation in trust for the purposes of the Foundation and found them valid trusts under the statute. From his comprehensive and learned opinion has been quoted the early history of the trust appearing herein (*Matter of Tiffany,* 157 Misc. 873).

During the latter years of Mr. Tiffany's life, because of the business depression, the income available for the maintenance

of students, and consequently the number in residence at the school, had very much declined. This decline continued after Mr. Tiffany's death, and as time went on, the cost of maintaining buildings and property absorbed a constantly. increasing proportion of the income. In 1942, when the number of students was reduced to eight, the maintenance of the school was dis-- continued and the buildings were. taken over for temporary use by the National Defense Research Committee. They have now been returned to the trustees and the future operations of the Foundation have thus become a subject for immediate consideration.

The trustees have presented to the court a petition seeking the following relief: (1) Permission to deviate from the precise terms of the trust, to authorize the sale of real and personal property belonging to the trustees, the proceeds to be added to.the capital funds in their hands; (2) authority to invest capital funds of the trust in securities selected by the trustees in their discretion, rather than limiting such investments to those securities legal for savings banks and trustees; (3) approval and ratification of the acts of the trustees with relation to their holding of stock of Tiffany & Company and C. C. Gunther's Sons, Inc.; (4) authorization for the establishing of a permanent memorial of the founder, Louis Comfort Tiffany, and (5) for other relief in the court's discretion deemed warranted.

The Foundation's real property at Laurelton consists of over one hundred acres, largely wooded hillside adjacent to Cold Spring Harbor. There is a large mansion, and appurtenant buildings, including a remodeled and enlarged stable which was used for the housing of students during the operation of the school. There are also an old remodeled frame dwelling used as an art gallery and museum and another building known as the Chapel wherein are installed an altar, windows and other chapel furnishings designed by the founder himself. The value of all this property is problematical. The buildings (though exempt from taxation) are assessed by the Nassau County Department of Assessment at $300,975, and the land at $146,845, a total of $447,820. An affidavit submitted in this proceeding by a competent appraiser reports that the buildings, which are of frame and stucco construction, are rapidly deteriorating. An inspection of the premises supports that view. In the appraiser's opinion, the present buildings are of a size and character, and in a state of disrepair quite unlikely to attract a wealthy person seeking a home, and are a liability

to the property rather than an asset. He appraises the real property at $110,200.

The personal property in the dwelling consisting of works of art and furnishings are estimated as likely to realize upon sale $95,000. No estimate is made of the value of the contents of the art gallery, which are largely Mr. Tiffany's own productions, or the chapel altar, windows and furniture which were likewise his creations.

Mr. Tiffany, during a long lifetime, engaged in many fields of artistic endeavor. He was a painter, a worker in metal, a great designer of glass; he was an officer and director of the well-known firm of Tiffany & Company, jewelers, goldsmiths and silversmiths, of which his father was the founder. When he created the Foundation in 1918, it was his plan that, at least during his lifetime, the work of the Foundation should go forward under his own observation; it was his hope that the beautiful home which he had built and the collections of artistic objects which he had amassed might forever serve as an inspiration to those to whom the Foundation offered its facilities. Nevertheless, he realized that the project was an experiment; and however well it may have succeeded in the past, he was too practical a man to desire the continuance of any particular method of operation if the public welfare as involved in artistic appreciation and education would be better served by a change.

Such a change is now regarded by the petitioner trustees as not only desirable but inescapable. A constantly increasing ratio of a decreased income has necessarily been applied to the maintenance of buildings and grounds, and the primary object of the creation of the trust, the promotion of education in art, is increasingly impossible of accomplishment. The trustees are of the unanimous opinion that the greater part of the real and personal property should be sold and the proceeds added to the capital funds of the trust. After several hearings, and an inspection of the property at Laurelton, I am in complete agreement with this conclusion. However successful the method of operation was during the founder's lifetime and until 1942, it is, in the present state of the affairs of the trust, quite impossible of continuance. The proposal of the trustees that the available income from the trust funds be applied for the creation of fellowships for creative work in the fine arts is entirely consistent with the purposes for which the trust was created, will afford a wider range of selection and will permit the extension of assistance by the Foundation in accordance with the artist's financial need, without burdensome restrictions as to age, sex, race or marital status.

In the hands of trustees, intent as are the petitioners upon an accomplishment of the founder's aims, such a general plan may be lodged with confidence that they will in course of time and experience produce a beneficial and workable system which, in fostering the artistic spirit, will be the ideal memorial to Louis Comfort Tiffany.

The trustees feel, however, that a permanent physical memorial of the founder should be established, which will in some degree fill the void which will be created by the disappearance of the Laurelton estate. The art museum upon the property contains a notable collection of Mr. Tiffany's creations in many fields—water colors, oils, glass, metal, enamels, textiles. It may be practicable to retain a small portion of the land, perhaps including this building, for a permanent museum. Likewise, a similar disposition may be feasible of the Chapel, housing, as it does, in the form of a mosaic altar, colored glass and other furnishings, an outstanding example of the founder's creative powers. On the other hand, it may be found desirable to create memorials by gift of some portion of these items to established museums or other institutions for permanent display. The trustees should retain any property believed suitable for any of these purposes, and there may be submitted to the court for its approval, any specific proposal believed by the trustees to be in furtherance of the accomplishment of the founder's purposes as hereinbefore set forth.

The petitioners in this proceeding have further sought approval and ratification of their acts with respect to stock of Tiffany & Company and C. C. Gunther's Sons, Inc.; and also seek a determination that they be not limited to so-called "legal investments" but be declared to be empowered to make investments in their discretion.

The Tiffany and Gunther stock was included in the gift of the founder in 1918. He retained control of investment of the principal funds of the trust until his death. Thereafter, the trustees were advised that they would be under the duty of investing only in securities legal for savings banks and trustees, and their holdings were in large part transferred to such securities with a resulting shrinkage of income. An exception to this reinvestment was the Gunther stock which was not sold until about the time of the commencement of this proceeding. This stock was not widely held or readily salable; dividends upon it were omitted in 1933, 1934, 1935 and 1936. In 1937, a plan of recapitalization was agreed upon and a total of $50,749 was

received in dividends from 1937 until 1945. At about the date of the commencement of this proceeding, an opportunity presented itself for the sale of the stock and all of it has now been disposed of. Under all the circumstances, it would appear that the trustees have acted with prudence and care, and that their course with respect to the Gunther stock should be ratified and approved.

The trustees still hold the stock of Tiffany & Company given by the founder in 1918 as well as that bequeathed the Foundation at his death. There is, I think, no doubt that the founder contemplated the holding of this stock in the discretion of the trustees, for as long a period as they believed desirable, and expected the stock to be treated with due regard for the interests of the other stockholders of the corporation. This stock has always been particularly closely held and there have been few sales in the open market. Furthermore, the income from it has been steady and has constituted a substantial portion of the Foundation's income, except during some of the war years. The sale of the large number of shares held by the trustees would of necessity be an extended transaction. Under all the circumstances, the trustees should be authorized to retain the stock of Tiffany & Company so long as may seem wise in the exercise of a sound discretion.

I do not regard it as immediately necessary to determine whether the trustees under applicable provisions of law have the power to invest in any form of securities which may to them seem wise. Upon this issue, it seems that further argument and consideration is desirable. If by sales of property made as now proposed funds are created for investment, directions can then be given.

At this stage, the petitioners may submit an order, to be settled upon notice to the Attorney-General, authorizing the sale of real and personal property held by the Foundation in such manner and for such prices and upon such terms as they may, in their discretion, deem wise; such order may also authorize the retention of the stock of Tiffany & Company and the ratification and confirmation of the acts of the trustees with respect to the Gunther stock, all as hereinabove set forth.

It may also provide a general scheme for the creation of fellowships and, if desired, general authorization for permanent memorials to Louis Comfort Tiffany, subject to the further order of the court as to any specific project.

Proceed on notice accordingly.