In the Matter of the Application of JOHN T. ARMS et al., as Trustees of the LOUIS COMFORT TIFFANY FOUNDATION.

Supreme Court, Special Term, Nassau County, April 28, 1948.

*Harold J. Baily* for trustees, petitioners.

*Nathaniel L. Goldstein, Attorney-General* (*Corning G. McKennee* of counsel), for unknown beneficiaries.

C. A. JOHNSON, J. In this proceeding, the trustees of the Louis Comfort Tiffany Foundation, a charitable trust for art education, seek instructions with respect to the administration of their trust.

The institution of which petitioners are trustees was established in his lifetime by the late Louis Comfort Tiffany (*Matter of Tiffany*, 157 Misc. 873). In 1946, a proceeding was maintained by the trustees in this court, in the course of which permission was accorded them to deviate in some degree from the terms of the trust, with respect to discontinuing the maintenance of a school theretofore operated by the trustees, and allowing the sale of certain real and personal property held by them. (*Matter of Arms* [*Tiffany Foundation*], 189 Misc. 576.) At that time the court left undetermined one of the questions with respect to which instructions are now sought, namely, the responsibility of the trustees with respect to the investment of funds of the trust.

By one of the several instruments creating the trust in 1918, the settlor provided: " The powers and duties of the trustees and the manner in which they shall account, are all the powers and duties of trustees of a membership corporation organized under the laws of the State of New York, subject only to such limitations upon such powers and duties as are herein expressly stated, and the manner in which they shall account is the same manner in which the trustees of such membership corporations are required to account, subject as aforesaid."

The settlor, at the same time, conveyed to the trustees real property, and personal property consisting of preferred and common stocks of various corporations, including Tiffany & Company, of a total value of nearly $1,000,000. He reserved during his lifetime the right to amend the terms of the trust, and retained for his life absolute dominion over the rents, issues and profits of all real and personal property conveyed to the trustees. A letter of instructions accompanying the conveyances and constituting a part of the instruments creating the trust contained the following language:

" Nevertheless, in the line of complete understanding, it is my wish and expectation that you will, by appropriate resolution, provide as follows:

" That only the income of the securities given to the Foundation shall be used for its support and maintenance; that the principal given, whether it continues to be invested in the securities I have transferred or is otherwise invested, shall always remain intact; that you have the power of investment and re-investment except as to the stock of Tiffany & Company; that the stock of Tiffany & Company during my lifetime, shall remain in my name, that I retain the right to vote thereon and that after my death no sale of the same shall be made until an option

shall have been given to the then directors or trustees of Tiffany & Company by notice in writing to purchase the same either for themselves or for other then stockholders of Tiffany & Company, at any price at which it is proposed to sell, and that it shall not be sold to others until thirty days after the expiration of such option.''

Following the settlor's death in 1933, the question arose whether in reinvestment or retention of funds of the trust, the trustees were limited to securities legal for investment by trustees. Their acts with respect to the handling of stock of Tiffany & Company and C. C. Gunther's Sons Inc. have been approved by this court. (*Matter of Arms [Tiffany Foundation], supra.*) They now seek a determination of their authority as to future investments.

The trust documents contain no language limiting the trustees to investments of the so-called '' legal '' list; on the contrary, the original conveyance included various securities not of that type, and clearly contemplated a long retention of the Tiffany stock. It might reasonably be said that the settlor intended to repose a considerable discretion in the trustees in the making of reinvestments, except insofar as that was affected by his reference to the powers of trustees under the Membership Corporations Law already quoted.

In 1945, the Legislature added a new section 27 to the Membership Corporations Law (L. 1945, ch. 710, eff. April 11, 1945) reading as follows: '' Subject to the limitations and conditions contained in any gift, devise or bequest, a membership corporation, created by or under a general or special law, may invest its funds in such mortgages, bonds, debentures, shares of preferred and common stock and other securities as its directors shall deem advisable.'' If this statute now controls the making of investments by the trustees, they are not now limited to investments upon the legal list, whatever their power may have been in the past.

It seems to be the accepted doctrine that the obligations of trustees with respect to investments are fixed by the law effective at the time the investment is made. (*Matter of Hamersley,* 152 Misc. 903; *City Bank Farmers Trust Co.* v. *Evans,* 255 App. Div. 135.) With this view the Attorney-General expresses himself to be in accord, and the court holds that the powers of the petitioners with respect to the making of investments are now subject to and defined by the provisions of section 27 of the Membership Corporations Law; and that no provision of the documents creating the trust limits the authority conferred by that section with respect to the nature of investments.

The petitioners further seek permission to charge to principal the legal and other expenses incurred, or hereafter to be incurred, in securing and executing the order of this court made July 31, 1946, whereby the trustees were authorized to make various deviations from the previous manner of the execution of the trust, and in the course thereof to sell certain of their property, real and personal. The court has reached the conclusion that this is the proper course. The proceeding was an extraordinary one; it has already resulted in the creation of additions to the principal funds of the trust and should, in the future, bring further additions to such funds. These additions are clearly chargeable with the expense of their realization.

"In general whatever regularly recurring or ordinary expenses are necessary to preserve the trust property or its value are payable out of income." (2 Scott on Trusts, § 233.2, p. 1260.)

"Although current expenses are payable out of income, extraordinary expenses are usually payable out of principal, even though they are incurred for the benefit not only of the beneficiary ultimately entitled to the principal, but also of the beneficiary entitled to income. * * * Expenses properly incurred by the trustee in litigation are ordinarily payable out of principal. This is true, for example, as to legal expenses incurred in defending the trust estate or in getting in trust property. Where the purpose of the suit is to preserve or increase the principal of the trust estate, it is fair that the costs of the litigation should be paid out of principal. It is immaterial whether the trustee is successful or unsuccessful in the litigation." (2 Scott on Trusts, § 233.3, pp. 1263, 1267.)

With the amount of such charges the court is not presently concerned; neither will any direction be made as to an accounting by the trustees; but, as suggested by the Attorney-General, the trustees may well deem an accounting advisable, at a point in the history of the trust from which there is anticipated a renaissance of activity and of the public usefulness envisioned by the founder.

An order may be settled on notice in accordance herewith.