Jeffries Estate.

524

Argued April 24, 1958. Before BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Harold Cramer*, appellant, in propria persona.

*Robert T. McCracken*, with him *Samuel S. Logan, Jr.*, for appellees.

OPINION BY MR. JUSTICE BELL, June 30, 1958:

The question involved is a very narrow one: Can the testamentary trustees purchase shares of stock?

Thomas J. Jeffries, testator, died on February 23, 1922, leaving a last will dated January 27, 1922. He left his residuary estate in trust for certain persons and purposes. Testator then provided in the Seventh item of his will pertinently as follows: "SEVENTH: I confer power upon my Trustees during the activity of the trust: . . . To retain any investments which I may have made, and to alter, vary, and change investments and reinvestments from time to time, without being

confined to what are known as legal securities; but they shall have no power to purchase shares of stock."

The testamentary trustees on December 28, 1956 filed a partial account for the period November 9, 1956 to December 11, 1956. The account or the "Statement of Proposed Distribution" showed that the trustees had purchased 10 shares of the common stock of E. I. du Pont de Nemours & Co. and immediately sold the stock at a loss of $25.18.* The Auditing Judge, upon the demand of the trustee ad litem, surcharged the trustees for the loss. The exceptions filed by the trustees were sustained by three judges, with two judges dissenting, and the Court instructed the trustee ad litem to appeal from this decision to this Court. The trustee ad litem thereupon took this appeal from the lower court's final decree.

Section 18 of the Fiduciaries Investment Act of 1949, P. L. 1828, 20 P.S. §821.18 provides: "The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstances, shall come into his control; *and whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act.*** In the absence, however, of an *express restriction to the contrary* in the trust instrument, the fiduciary may invest in any investment authorized by this act."

The testator's intention is the pole star in the construction of every will and that intention must be as-

---

* No dates are given, probably for the reason that the date is immaterial.

** Italics throughout, ours.

certained from the language and scheme of his will;[*] it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words: *Kelsey Estate*, 393 Pa. 513, 143 A. 2d 42; *Britt Estate*, 369 Pa. 450, 87 A. 2d 243; *Sowers Estate*, 383 Pa. 566, 119 A. 2d 60; *Cannistra Estate*, 384 Pa. 605, 121 A. 2d 157.

Testator gave his trustees two powers with respect to investments: (1) To retain any investments which he had made; (2) To alter, vary and change investments and reinvestments without being confined to what are known as legal securities. However, testator in the clearest language limited and restricted the investment powers of his trustees by clearly, specifically and unequivocally providing that "they shall have no power to purchase shares of stock." This restrictive or prohibitory language is clear, unequivocal, imperative and mandatory and unquestionably restricts and prohibits the trustees from purchasing shares of stock. Where a testator uses clear, unambiguous, unequivocal and mandatory language it is not necessary for him to spell out the restriction of investment powers in the identical language used in a subsequent Act of the Legislature.

Notwithstanding the ingenious analogy suggested by appellees' learned counsel, we are convinced that this testator clearly, specifically and unequivocally prohibited his trustees from purchasing shares of stock.

---

[*] This is conceded by appellees who aptly say: "It is axiomatic to say that the intent of the testator controls in the interpretation of wills, and that artificial rules of construction can apply only in case of ambiguity. It is likewise basic that the language of the testator must be [interpreted] in the light of conditions existing at the time the will was written."

For the reasons which are set forth at length in *Kelsey Estate,* 393 Pa. 513, 143 A. 2d 42, the decree is reversed.

Decree reversed. Costs shall be paid equally out of income and principal.