## Clyde Estate

*William H. S. Wells* of *Saul, Ewing, Remick & Saul,* for accountant.

*Abraham J. Brem Levy,* guardian and trustee ad litem.

BOLGER, J., April 30, 1963.—Decedent died October 24, 1905. This trust arose under his will dated July 10, 1896, and two codicils, copies of which are annexed.

Testator gave his residuary estate in trust to pay the income to his two sisters and the survivor of them for life, and following the death of the survivor, to pay the income to 11 named nieces and nephews in equal shares for life, and to the descendants of any niece or nephew who might die per stirpes, provided should any nephew die without descendants, one-half of his share of income is to be paid to his widow so long as she remains unmarried. The trust is to terminate upon the death of the last survivor of the life tenants at which time principal is to be paid to the descendants of the nieces and nephews per stirpes, with other conditions which need not now be recited.

By decree dated March 6, 1963, Abraham J. Levy, Esq., was appointed guardian ad litem for designated minors and trustee ad litem for all unborn and unascertained persons having a possible interest in remainder.

The account has been filed for confirmation and also for the purpose of re-confirming the trustee's power to purchase shares of stock.

Judge Lefever by an adjudication dated October 16, 1957, and Judge Shoyer by an adjudication dated April 6, 1960, both found that the trustee did have the authority to invest in legal investments including common stocks. Since both of the above adjudications were filed, the Supreme Court has handed down its decision in Brown Estate, 408 Pa. 214. The investment clause in the will reads as follows:

"To invest and reinvest; to alter, vary, change and sell, investments and reinvestments; and to do all this without being confined to what are known as 'legal securities', though I do not wish investments to be made in shares of stock excepting to such extent as they shall deem it necessary to protect, or to avoid sacrifice of, personal property to me belonging."

In Brown Estate, the investment clause authorized the trustee to ". . . make reinvestments as hereinafter provided; to invest and reinvest in mortgages which are a first lien on real estate in Pennsylvania and New York, in the first mortgage bonds of dividend paying railroads, in car trust or equipment trust certificates of dividend paying railroads, in United States loans, in the loans of the State of Pennsylvania and the State of New York, in loans of municipalities, township, school districts and similar public divisions in the State of Pennsylvania, and in ground rents in the City of Philadelphia; . . ."

The Supreme Court interpreted this will and found that the trustees were limited by the express and unambiguous language above cited to the types of investments enumerated.

The report of the guardian and trustee ad litem is annexed. It carefully identifies the parties entitled to income, shows the dates of the deaths of those who have died, their descendants, if any. The report notes that, in addition to that portion of the will above recited, testator directed that his trustee have the authority to

retain securities with shares of stocks or bonds and further stated: "It is my desire that my estate as speedily as possible shall be converted into investments such as bonds well secured and the like. I appreciate however that undue losses may arise from over hasty conversions. I therefore give a wide discretion to my trustees after having communicated to them my general wish that they will be contented to take a less income, if not absurdly small rather than to try to allow a large one through precarious investments." The report notes that Judge Lefever in his adjudication found the words "though I do not wish investments to be made in shares of stock" to be precatory, and that Judge Shoyer also found there was no prohibition and that the words were not mandatory: Lindsay's Estate, 311 Pa. 536.

The report then carefully considers Brown Estate, supra; Kelsey Estate, 393 Pa. 513; Jeffries Estate, 393 Pa. 525, and Saunders Estate, 393 Pa. 527, and concludes that the investment power in the present will is not controlled by any of the cited cases.

The report is approved.

A careful reading of the will and codicils clearly establishes the fact that testator knew the difference between mandatory and precatory words.

In paragraph fourth of the will, testator provided "It is my desire that my nephew, Thomas Clyde, shall keep my country place in Delaware County known as 'Goughacres' without charge. . . ." "I give him the right thus to occupy the same", and later in the same paragraph, "I do not wish him to rent it to others" and again in Item fifth of his will, in discussing his shares of stock in the Clyde Steamship Company, testator said in part "Whilst I do not prohibit my trustees from making sales to them after the year, I caution them to do so with great hesitation. Whilst I want the shares sold, if fair prices can be realized, I do not wish a great

sacrifice to be made. I therefore with this indication of my wishes leave to the discretion of my trustees the management of this valuable portion of my estate." The foregoing provision in the will bears a distinct resemblance to that portion of the will in which he gives his trustee the power to make investments, "without being confined to what are known as legal securities, though I do not wish investments to be made in shares of stock excepting to such extent as they shall deem it necessary to protect. . . ." The words following "excepting" clearly place within the power of the trustees a discretion to determine to what extent investments should be made in stocks although there is the precatory admonition to avoid over-investment.

The investment powers in this will when construed in relation to all other parts of the will are distinctly different than the strict limitation with reference to investments found in Brown Estate.

I, therefore, find that the investments in common stocks appearing in the account are proper and within the powers given to the trustee. . . .

And now, April 30, 1963, the account is confirmed nisi.