## Henry Estate.

Argued January 21, 1964. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*Albert Blumberg,* with him *McClenachan, Blumberg & Levy,* for guardian and trustee ad litem, appellant.

*Maurice Heckscher,* with him *Robert W. Denious,* and *Duane, Morris & Heckscher,* for appellees.

480

Opinion by Mr. Chief Justice Bell, March 17, 1964:

Appellant seeks a surcharge against testamentary trustees for losses incurred by them on sales of three securities. The narrow question thus raised involves a construction of the investment powers conferred by the Will of W. Barklie Henry.

Mr. Henry died December 24, 1930, leaving a Will dated January 13, 1913. In his Will and codicils, Henry created a trust for the benefit of his wife and his surviving children, including his daughter, Alice E. Henry von Briesen* and her issue. That trust still subsists.

On February 26, 1963, the trustees, Barklie McKee Henry and Girard Trust Corn Exchange Bank, filed a partial account. The Orphan's Court appointed appellant Albert Blumberg, Esq. as guardian ad litem for minors, and trustee ad litem for unascertained persons, who presently were or who might thereafter be interested in the trust. Blumberg filed exceptions to small losses claimed in the Account on securities which the trustees purchased and thereafter sold, namely, a $1,000 Pennsylvania Turnpike Bond due 2000-1993; a $1,000 U.S. Treasury Bond due 1966; and 10 shares of General Motors Corporation common stock. *All of these were legal investments under the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 P.S. §821.1 et seq., but were not specifically authorized by the Will.***

Blumberg's exceptions to the three aforesaid losses were dismissed by the Orphans' Court; hence this appeal.

---

* Misspelled in the Will "Van Dressen."

** We were informed that the trustees have purchased other securities totaling approximately $100,000 which are also legal investments under the Act of 1949 but were not specifically authorized by the Will.

The success or failure of the appeal depends, we repeat, on a proper construction of the investment powers given by the Will. Testator in his Will pertinently provided as follows:

"Item (4) : All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath unto the Girard Trust Company,* . . . In Trust to invest and keep the same invested, *not limiting my said Trustee to the investments limited by law as legal investments for such Trustee, but granting unto it a broader discretion* as is hereinafter more particularly set forth** and relieving it from any liability by reason of any loss or depreciation in any such investments made in its discretion, . . .

"Item (5) : . . . My Trustee above named, or its successors, may invest my said estate in first mortgages on real estate, such mortgages not to be in excess of sixty per cent (60%) of the assessed valuation of the property loaned upon, and at a rate of interest not lower than four and four-tenths (4-4/10%) ; in first mortgage, general mortgage, and consolidated mortgage bonds of Standard Railroad Companies; in car trusts of private Coal Companies operating over the Pennsylvania Railroad lines in which latter case twenty-five per cent (25%) shall have been paid in in cash, in first mortgage bonds of Coal Companies where the aggregate bonded issue is not at excessive figures per acre in the judgment of my Trustee, and where there is a sinking fund provision of ten cents ($.10) per ton; in bonds of the United States Steel Corporation or Pennsylvania Steel Company; in *stocks* of Standard Railroad Companies, paying five per cent (5%) or more dividends on their par value; in first mortgage trolley bonds, or underlying general and consolidated

---

* Testator's son, Barklie McKee Henry was appointed as a co-trustee by codicil.

** Italics throughout, ours.

mortgage bonds of trolley companies; in short time notes of Standard Railroad Companies well secured by bonds (and) or stocks or mortgages.

"My Trustee also may retain any such securities which I may own at the time of my death, or may invest further in the same securities, in its discretion, *my intent being not to limit the investment of the funds held under this trust to strictly legal investments* but to enable my Trustee to invest in safe bonds yielding an income of at least four per cent. (4%) on such investment, *and in such investments as I may have myself made.*"

It is crystal clear that the testator did not intend to limit his trustees to so-called legal investments. Whether he intended to limit his trustees to the securities or classes of securities *specifically* enumerated by him, or whether he intended to authorize, inter alia, the purchase of securities which were legal investments at the time of purchase, or exactly what was the scope of investment powers granted, are more difficult questions.

Appellant contends that because the three investments he challenges were not within any of the classifications of investment *specifically enumerated* by the testator, investment therein was not authorized and the trustees should be surcharged. On the other hand, trustees argue (a) that the Will, *considered as a whole,* discloses that the enumeration of particular types of investment was intended to be suggestive or permissive, but not mandatory or exclusive; and (b) that as the challenged investments were legal investments at the time they were made, they were permissible investments; and (c) in any event they (the trustees) are protected by Section 18 of the Fiduciaries Investment Act of 1949, supra. Section 18 of the Act of 1949 pertinently provides:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstance, shall come into his control; and *whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act.* In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."

Before discussing the contentions of the parties or the meaning and application of the Act of 1949, we deem it advisable to restate the basic and applicable legal principles which were recently set forth in *Brown Estate,* 408 Pa. 214, 183 A. 2d 307; *Saunders Estate,* 393 Pa. 527, 529, 143 A. 2d 367, and in *Kelsey Estate,* 393 Pa. 513, 143 A. 2d 42.

This Court said, in *Saunders Estate*: "The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157."

In *Kelsey Estate,* the Court said (pages 518-519): "A testator or settlor may ' "condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive

him of it would be a fraud on his generosity." . . . "cujus est dare, ejus est disponere" ' : Borsch Estate, 362 Pa. 581, 587, 588, 67 A. 2d 119. This principle has been firmly imbedded in our law for over 100 years: Holdship v. Patterson, 7 Watts 547; Heyl Estate, 352 Pa. 407, 43 A. 2d 130; Riverside Trust Co. v. Twitchell, 342 Pa. 558, 20 A. 2d 768; Harrison's Estate, 322 Pa. 532, 185 A. 766; Morgan's Estate, 223 Pa. 228, 72 A. 498. See also Grote Estate, 390 Pa. 261, 135 A. 2d 383.

"Courts cannot, even when aided by hindsight and the ingenuity of counsel, rewrite a settlor's deed or a testator's will, or distort or torture his language or the language of a statute relating thereto, in order to attain what we believe is beneficial and wise, or even what we believe settlor would or should have provided if he had possessed a knowledge of all presently existing circumstances." See also *Jeffries Estate,* 393 Pa. 523, 143 A. 2d 391.

Furthermore, in *Brown Estate,* 408 Pa., supra, the Court—without deciding whether it would be legally or constitutionally possible for the legislature to enact in 1949 a statutory rule of construction which could or should be applied to the Will of a testator who died several decades earlier, and who absent the gift of prophesy could not possibly have known about Section 18 of the Fiduciaries Investment Act of 1949—interpreted the testator's investment powers as prohibiting investments in common stock which were legal investments at the time made.

The Court said (pp. 227, 228, 229) : ". . . '. . . "One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from . . . or improperly defeated. . . . The law will not permit that to be accomplished by indirection which cannot be done directly . . . ." ' "

". . . It would not only be unreasonable, it would be absurd to rule that the Legislature intended to require a testator who had died 30 years before, to use the identical *express* language used in the Act of 1949." See also to the same effect, *Pew Trust,* 411 Pa. 96, 108, 191 A. 2d 399.

It is clear as crystal, we repeat, that testator did not intend to limit his trustees to legal investments— he not only said so twice,* but the classes of investments which he specifically authorized included only one investment which was a *legal* investment at the time of his death.** For example, in Item (5), testator authorized, inter alia, investments in certain *stocks,* viz., "of standard railroad companies."

We believe that a careful analysis of the *entire* will indicates that testator intended to give his trustees power to invest (1) in the bonds and stocks which he specifically enumerated, (2) in the same securities which he owned at the time of his death, (3) in legal investments, (4) in safe bonds yielding an income of at least 4 percent, and (5) in such investments as he may ever have made. Legal investments, under the language, scheme and intent of this will, means investments which are legal investments at the time purchased (or made). Cf. *Iscovitz's Estate,* 319 Pa. 277,

---

* See supra.

** "Legal" investments under the statutes in effect at testator's death were: (a) "Stocks or public debt of the United States." (b) "Public debt of this Commonwealth." (c) "Public debt of the city of Philadelphia." (d) "Real securities." (e) "Ground rents or other real estate." (f) "Bonds or certificates of debt now or hereafter to be created and issued according to law by any of the counties, cities, school districts or municipal corporations of this commonwealth."

The power of Fiduciaries to invest in property as above classified is found in §14 of the Act of March 29, 1832, P. L. 190; §2 of the Act of April 13, 1854, P. L. 368, and §1 of the Act of May 8, 1876, P. L. 133.

179 A. 548; *Detre's Estate*, 273 Pa. 341, 349, 117 A. 54; *Wood's Estate*, 272 Pa. 8, 12, 115 A. 865; *Wood's Estate*, 130 Pa. Superior Ct. 397, 403, 197 A. 638; *In re Jackson's Will*, 282 App. Div. 690, 122 N.Y.S. 2d 550 (1953); *Application of Arms*, 193 Misc. 427, 81 N.Y.S. 2d 246 (1948); *City Bank Farmers Trust Company v. Evans*, 255 App. Div. 135, 5 N.Y.S. 2d 406 (1938), reargument denied 256 App. Div. 967, 11 N.Y.S. 2d 223 (1939); *Will of Yates*, 259 Wisc. 263, 48 N.W. 2d 601 (1951); *Fidelity Union Trust Company v. Price*, 11 N.J. 90, 93 A. 2d 321, 325 (1952). See also, Restatement (2d), Trusts, §227, comment p.

The investment in or purchase of a $1,000 Pennsylvania Turnpike Bond, and of a $1,000 United States Treasury Bond, and ten shares of the common stock of General Motors Corporation, were at the time of purchase, and are today, legal investments under the Fiduciaries Investments Act of May 26, 1949, supra.*

Although one will rarely, if ever, have a twin brother,** appellant contends that *Kelsey Estate*, 393 Pa., supra; *Saunders Estate*, 393 Pa., supra; *Jeffries Estate*, 393 Pa., supra, and *Brown Estate*, 408 Pa., supra, control the present case. We disagree. The language of the investment powers in each of the wills in those estates while similar was *importantly different* from the language of Mr. Henry's Will.

In *Kelsey Estate*, supra, settlor provided that his trustee might invest in "bonds, mortgages and such other securities as to it shall seem proper . . . but except to this extent, the power of investment of said trustee shall not in any event include the right to invest in stocks." In reversing the lower Court, we held that settlor had "clearly, unambiguously and unequivo-

---

* We make no decision as to the constitutionality of said Act, if retroactively applied.

** *Newlin Estate*, 367 Pa. 527, 80 A. 2d 819; *Burleigh Estate*, 405 Pa. 373, 175 A. 2d 838.

cally prohibited the trustee from investing in stocks" and that "[i]t would be unreasonable and absurd to hold that settlor, in order to prohibit the purchase of stocks, must use the same identical (restrictive) language which the Legislature used 35 years later."

In *Saunders Estate*, 393 Pa.; supra, the Will provided: "My Executor and Trustee shall have power to retain as part of my estate any investments I may have made, whether legal or not, it being my desire that the same shall not be needlessly sacrificed; and I direct that my Executor and Trustee shall have power to invest and reinvest in Government Bonds *only or Bonds guaranteed* by the Government."

This Court surcharged the trustee for the loss sustained on the sale of a "legal investment" stock which it had purchased, and said, "Testatrix . . . in the clearest language, limited and restricted the fiduciary's power to invest and reinvest *only* in Government bonds or any bonds guaranteed by the Government."

In *Jeffries Estate*, 393 Pa., supra, testator provided, "I confer power upon my Trustees . . . To retain any investments which I may have made, and to alter, vary, and change investments and reinvestments from time to time, without being confined to what are known as legal securities; but they shall have no power to purchase shares of stock."

The Court surcharged the trustee for the loss on a stock which was a legal investment at the time of purchase and said, ". . . testator in the clearest language limited and restricted the investment powers of his trustees by clearly, specifically and unequivocally providing that 'they shall have no power to purchase shares of stock.' . . . Where a testator uses clear, unambiguous, unequivocal and mandatory language it is not necessary for him to spell out the restriction in investment powers in the identical language used in a subsequent Act of the Legislature."

In *Brown Estate*, 408 Pa., supra, a testator had died in 1919, leaving a will dated, as was the will in the case at bar, in 1913. He bequeathed the residue of his estate (except his New York real estate) "To Girard Trust Company and its successors In Trust, nevertheless, for the following uses and purposes: To retain existing investments or to sell the same and make reinvestments as hereinafter provided; to invest and reinvest in mortgages which are a first lien on real estate in Pennsylvania and New York, in the first mortgage bonds of dividend paying railroads, in car trust or equipment trust certificates of dividend paying railroads, in United States loans, in the loans of the State of Pennsylvania and the State of New York, in loans of municipalities, township, school districts and similar public divisions in the State of Pennsylvania, and in ground rents in the City of Philadelphia; . . ."

Trustee purchased bonds of the Pennsylvania Turnpike Commission and certain common and preferred stocks, all of which were legal investments at the time of purchase. The Court reversed the lower Court and held that the words used by the testator, while not identical with those used in *Saunders Estate* were "in effect similar thereto and the equivalent thereof," and limited the investment powers of the trustee to the securities specifically enumerated in the Will.

We repeat, the language dealing with investment powers in the *Kelsey, Saunders, Jeffries* and *Brown* Wills or deed was different from the language of and the powers granted to the trustees in the *Henry* Will. It is unnecessary to consider or further discuss any other contentions.

Decree affirmed; costs to be paid out of the principal of the estate.