## Tower Estate (No. 2)

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*George B. Clothier*, guardian and trustee ad litem, for exceptant.

*William H. S. Wells*, contra.

LEFEVER, J., December 18, 1964. — The question before the court is whether the trustees, in view of the investment powers contained in the will and the prior interpretation thereof by this court, acted properly in investing in stocks and bonds which are legal investments under The Fiduciaries Investment Act of 1949, as amended.

Testator died July 4, 1889, leaving a will dated May 21, 1889. By his will testator gave his residuary estate to his trustees, in trust, to pay the income to his wife, his children and their descendants until "the expiration of twenty-one years from and after the death of the last survivor of my children and grandchildren who may be born in my lifetime;" and at that time to distribute the

principal among his "lineal descendants then living." One such descendant, Grace Tower Bright, aged 78, still survives. Hence, the trust will continue for upwards of twenty-one years.

The trustees' investment powers appear in Item Five of testator's will, viz:

". . . to take possession of, hold, manage and appropriate the same and to collect, receive, obtain and recover all the rents, issues, profits, *dividends* and gains thereof and all the proceeds and avails thereof, and to invest and keep invested the same and every part of the capital thereof so as to make the same as productive as reasonably can be, . . . hereby *directing them to preserve such investments and securities as I shall leave standing in my name* so long as they my said Trustees or their successors in the Trust shall deem prudent, and making such new investments as they in their best judgment and discretion shall deem advisable and advantageous to my Estate *without confining themselves to such investments as the law directs for the investment of trust funds,* hereby allowing them *full power* to select any investments or securities they may approve *except the Capital Stocks of Corporations and obligations not accompanied with reasonable securities,* with full power also to the said Trustees to change any such investments whether left by me or made by them, and to convert and reinvest the proceeds whenever and as often as they in their judgment and discretion may think most to the advantage of my Estate." (Italics supplied.)

Section 18 of The Fiduciaries Investment Act of 1949, provides as follows:

"The testator or settlor in the instrument establishing a trust may prescribe the powers, duties and liabilities of the fiduciary regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention and disposi-

tion, by sale or otherwise, of any property which, at any time or by reason of any circumstance, shall come into his control; and whenever any such provision shall conflict with this act, such provision shall control notwithstanding this act. *In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this act."* (Italics supplied.)

Do the quoted investment provisions of the will constitute such "an express restriction to the contrary?"

Judge Bolger, in his adjudication of February 19, 1954, in re the trustees' nineteenth account, interpreted the disputed investment clause to authorize the then questioned legal investments, viz.:

"A careful consideration and review of the investment clause in the present case in the light of the above decided cases, the Act of Legislature and the changes, which have occurred since this testator died in the methods of financing, indicate to me that a reasonable interpretation of the clause must lead to the conclusion that the testator intended his trustees to be unfettered in their selection of securities for investments within the category of proper investments for trusts in Pennsylvania and that the express prohibition against investment in capital stocks and obligations not accompanied with reasonable securities was intended to be a curb on the trustees in relation to investments which were not legal investments.

"This testator has given unusually liberal powers of investment to his trustees. He initially extends it *beyond* those authorized by law as proper for trust funds as he incorporates into his will the expanding authority provided by later legislation including the Act of 1949 (supra). The fact that the latter Act authorizes as legal what the later phrase in the will, 'except capital stocks of corporations and obligations not accompanied with reasonable securities', appar-

ently forbids, at first blush creates an apparent ambiguity. To resolve this ambiguity by applying only the latter clause would require that we strike from the will the first one, something we cannot do. However, they can be reconciled by holding that the second clause shall apply not in elimination of, but consistent with the first whereby the trustees are allowed to invest in stocks and securities authorized by the Act of 1949, but forbidden to buy stocks and debentures not so authorized. The phrase 'obligations not accompanied with reasonable securities' must be given a fluid connotation, not one that is limited to the date of the testator's death. The testimony clearly indicates that present-day debentures are accompanied with reasonable securities."

Judge Saylor, speaking for our unanimous court, dismissed the exceptions to that adjudication, stating in 87 D. & C. 447, 450:

"Item 5 of the will discloses that testator wanted his trustees to collect and distribute dividends and to make his trust estate 'as productive as reasonably can be'. This indicates that he did not object to corporate stocks (his estate was in fact comprised of them at his death) and that he recognized that great income productivity might more likely result from such investments than from bonds or mortgages, both of which provide for a fixed return. See Gillingham Estate, 353 Pa. 493 (1946). Moreover, the use of the phrase 'investments and securities' surely contemplates corporate stocks. The word 'securities' has been defined as including common stocks: Gillingham Estate, 353 Pa. 493 (1946); McGraw's Estate, 337 Pa. 93 (1940); Wood's Estate, 130 Pa. Superior Ct. 397 (1938) (investment authorized 'in any securities or investments' without restriction to legal investments).

"Furthermore, there is no word of prohibition on unsecured obligations and common stocks in the clause

excusing the trustees from confining themselves to 'such investments as the law directs for the investment of trust funds'. It is only when that clause is passed and the reader goes on to the language creating an extension of the power to include the right to invest in so-called 'non-legals' that he comes upon the language which constitutes a prohibition on certain investments in that category.

"From the above it is our conclusion that testator's intention was not to prohibit in any way the purchase by the trustees of 'investments and securities' authorized by law as legal for trust funds. There is in the will no language amounting to 'an express restriction to the contrary' as required by the Act of 1949, supra."

The trustees, relying upon the foregoing decision, sold 1,300 shares of Finance Company of Pennsylvania; 3,850 shares of Fidelity-Philadelphia Trust Company; 2,000 shares of Pennsylvania Railroad Company; 600 shares of Chicago & Eastern Illinois Railroad Company; 800 shares of Glen Alden Coal Company; and 900 shares of Grand Rapids Motor Coach Company. The first three were decedent-owned stocks which accountants had properly retained from the inception of the trust, pursuant to testator's express authorization to do so. The other stocks sold by trustees had been "received as the result of reorganizations of corporations in which they had bond holdings." The total value of the stocks so sold was $1,153,206.59, out of a portfolio valued at $6,577,426.39, namely 17½ percent thereof.

These stocks had been retained by the trustees as a hedge against inflation. They constituted the majority of equities held in the portfolio under the authority of the will to retain decedent-owned stocks. However, armed with the authorization of this court to reinvest in investments authorized by the Fiduciaries Investment Act of 1949, the trustees, after careful considera-

tion, sold the foregoing stocks and replaced them with other legal investments within that act; namely, common stocks, preferred stocks and debentures. The substantial appreciation in the value of the securities so purchased proves the soundness of their judgment.

Thereafter, in 1958, the Supreme Court decided Kelsey Estate, 393 Pa. 513; Jeffries Estate, 393 Pa. 523; and Saunders Estate, 393 Pa. 527. The trustees then filed their twentieth account, to ascertain whether these cases overruled the foregoing decision of this court. The guardian and trustee ad litem vigorously urged that the trustees were prohibited from investing in stocks of corporations. Judge Lefever in his adjudication of April 1, 1960, followed and adhered to the views expressed by Judge Bolger and Judge Saylor. No exceptions or appeal were filed.

The decision in Brown Estate, 408 Pa. 214 (1962), again raised doubts in the trustees' minds as to their investment powers. Accordingly, the pending twenty-first account was filed to resolve those doubts. Judge Shoyer held that the trustees had power under the will to acquire investments which were legal under the 1949 Act, and he refused to surcharge the trustees. Exceptions to his adjudication are now before the court.

At the audit before Judge Lefever, Dr. Grodinsky, Professor of Finance and Commerce of the University of Pennsylvania, testified that it is the accepted present investment policy among even the most conservative financial and investment experts to diversify investments and include a percentage of sound preferred stocks, common stocks and debenture bonds in a well rounded portfolio. In his words, ". . . the most conservative States in the Union have now made it legal for life insurance companies, mutual savings banks and fiduciaries to buy common stocks. The State of New York whose laws on this point have always been con-

sidered most conservative, that is, most restrictive, have, since 1951, authorized life insurance companies, fiduciaries and savings banks to buy common stocks."

At the audit before Judge Shoyer, this testimony of Dr. Grodinsky, who was then dead, was by stipulation admitted into evidence. Additional expert opinion as to current and proper investment philosophy was introduced. It was also stipulated as fact that at his death in 1889, testator owned many shares of stock in 23 corporations, which represented 35 per cent of $6,462,150, the inventoried value of his estate.

In summary, the facts before this court indicate that if we now decide that the trustees are forbidden to invest in "the capital stocks of corporations and obligations not accompanied with reasonable securities," the estate portfolio will be very limited in range of investments, because of the sale of decedent-owned securities, based upon the decision of this court. This will be in sharp contrast to the breadth and diversity of the portfolio in 1954. Moreover, it appears that the current philosophy of investing in common stocks has been adopted for fiduciaries by our legislature and is, therefore, the established public policy of this Commonwealth. Our experience with trust estates generally and with this estate particularly, indicates that to forbid investment in sound common stocks would work a hardship upon the beneficiaries. Common sense, equity, and ordinary fairness require that the beneficiaries of this trust be protected from such result, unless a mandate from the Supreme Court requires us to rule otherwise. Do the recent decisions of that court constitute such a mandate?

The language in the trust instruments in the key cases follows: In Kelsey Estate, supra, at page 515: ". . . the Trustee is hereby authorized . . . to invest . . . the proceeds in bonds, mortgages and such other securities as to it shall seem proper . . . but except to this

extent, the power of investment of said Trustees shall not in any event include the right to invest in stocks. . . ." In Saunders Estate, supra, at page 528: "My Executor and Trustee shall have power to retain as part of my estate any investments I may have made, whether legal or not, . . .; and I *direct* that my Executor and Trustee *shall* have power to invest in Government Bonds *only* or Bonds guaranteed by the Government." In Jeffries Estate, supra, at page 524: "I confer power upon my Trustees . . . to retain any investments which I may have made, and to alter, vary, and change investments and reinvestments from time to time, without being confined to what are known as legal securities; but they shall have no power to purchase shares of stock." In Brown Estate, supra, at page 219, trustee was empowered "To retain existing investments or to sell the same and . . . to invest and reinvest in mortgages . . ., in the first mortgage bonds of *dividend paying* railroads,—in car trust or equipment trust certificates of *dividend paying* railroads, in United States loans, in the loans of the State of Pennsylvania and the State of New York, in loans of municipalities, township, school districts and *similar public divisions in the State of Pennsylvania,* and in ground rents *in the City of Philadelphia.* . . ." There was no provision in this case with respect to common or preferred stocks. (Italics supplied by Supreme Court.)

The Supreme Court ruled as to the first three cases that: "Settlor clearly, unambiguously and unequivocally prohibited the trustee from investing in stocks. . . . Settlor's language limiting and restricting the trustee's powers of investment is, we repeat, clear, unambiguous, unequivocal, mandatory and imperative": Kelsey Estate, supra, page 517. In Brown Estate, supra, Chief Justice Bell stated, at page 225, et seq.: "Testator then enumerated certain investments hereinabove set forth—which were at that time considered

exceptionally safe investments—but did not mention common or preferred stock of private corporations which at that time [1913] were *constitutionally prohibited* investments. . . . It is clear that testator intended to prohibit an investment in common or preferred stock." (Italics supplied by Supreme Court.) (That court also held that testator's language did not authorize investment in turnpike authority bonds).

There is no such "clear, unambiguous, unequivocal, mandatory and imperative" language in the instant will. No words limit the trustees' power of investment by prohibiting them "in any event" from investing in stocks as in Kelsey Estate, nor by *directing* them to invest *only* in government bonds as in Saunders Estate. Moreover, in Jeffries Estate, the key word is "power"; Trustees are given *power* to invest, but no *power* to purchase shares in stock. Furthermore, by his use of the word "purchase" instead of "invest" testator made it clear that whatever the legislature might authorize as proper investments for trustees, his trustees were forbidden to *purchase* stocks. Significantly, too, the restrictive clause in Jeffries was separated from the grant of investment powers by a semi-colon, a punctuation mark used chiefly in a coordinating function between major sentence elements: Walker Estate, 376 Pa. 16, 20. There the second clause was not subordinated to the former grant as it was in the instant case.

In contrast to the precise directions in the cited cases, is the long investment paragraph in the instant will. After instructing his trustees to invest "so as to make the same as productive as reasonably can be," and to retain decedent-owned investments, testator directed them to make such new investments as they deemed "advisable and advantageous" without confining themselves to legal investments. Testator then granted *full power* to trustees to select any investments they may approve "except the Capital Stocks of

Corporations and obligations not accompanied with reasonable securities." These few words should not be ripped out of context and read alone. They should be interpreted as part of an entire paragraph which sets forth testator's investment policy and goals. The paragraph must be given a meaning as a whole.

It is inconceivable that testator would have used the broad language that he employed to so restrict his trustees that they could not invest in legislatively authorized legal investments. It seems reasonable and logical that it was only to the *full power to invest in nonlegals* that the exception applies; otherwise we must disregard the phrase, "hereby allowing them full power to select any investments or securities they may approve." The "full-power" clause was an amplification of the preceding clause providing that the trustees were not to be confined "to such investments as the law directs for the investment of trust funds." Hence, testator was not limiting the trustees with respect to legal investments, but was concerned only with excluding from their power to invest in nonlegals their power to invest in "stock of corporations and obligations not accompanied with reasonable securities." Not only did testator grant "full power" once, but he repeated this grant of "full power" after the restrictive language. His direction to his trustees to exercise their "full power" to invest did not confer a privilege, but, on the contrary, placed them under a duty to comply: Restatement Trusts, 2d §227 (c) comment t. The will does not specify, as in Jeffries, that the trustees shall have "no power to purchase shares of stock." Testator simply made an exception to the power of the trustees to select investments or securities outside of the scope of legal investments It follows that the cited cases differ from the instant case and do not control it.

Moreover, in Kelsey Estate, supra, at page 516, the Supreme Court emphasized that in the interpretation

of each of these wills the intent of the testator is paramount, viz:

"We approach the solution of this problem in the light of a host of authorities which proclaim:

" 'No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail! This is the reason that the pole star in the construction of every will is the testator's intent. Moreover, "The testator's intention must be ascertained from the language and scheme of his will: 'It is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words': Britt Estate, 369 Pa. 450, 454, (87 A. 2d 243)": Sowers Estate, 383 Pa. 566, 119 A. 2d 60': Cannistra Estate, 384 Pa. 605, 607, 121 A. 2d 157."

To the same effect is Brown Estate, supra, at page 224.

Furthermore, the recently decided Henry Estate, 413 Pa. 478 (1964), supports the views herein expressed. There, testator included in his investment powers the two key provisions of the instant case, viz. (1) "not limiting my said Trustee to the investments limited by law as legal investments for such Trustee" and (2) "My Trustee also may retain any such securities which I may own at the time of my death . . ." Testator then enumerated specific investments for his trustees to invest in. The Supreme Court emphasized, pages 482 and 485, testator's repeated statements giving discretion to his trustees and providing that they not be limited to legal investments. The court held that the trustees were not surchargeable for investing in stocks and bonds which were legal investments under the Fiduciaries Investment Act of 1949, as amended, even though not specifically authorized by the will. The court, speaking per Mr. Chief Justice Bell, stated, at page 485:

"We believe that a careful analysis of the *entire* will indicates that testator intended to give his trustees power to invest (1) in the bonds and stocks which he specifically enumerated, (2) in the same securities which he owned at the time of his death, (3) in legal investments. . . . Legal investments, under the language, scheme and intent of this will, means investments which are legal investments at the time purchased (or made)."

It is significant that when testator drafted his will the range of investment permitted to a fiduciary was very limited, viz., "Government, State and Municipal bonds, mortgages properly secured, and, with the permission of the court, ground rents . . . See Judge Penrose's opinion in Miller's Estate, 14 Dist. R. 163, 164.

Moreover, the Pennsylvania Constitution of 1873, art. III, sec. 22, prohibited investments by fiduciaries "In the bonds or stocks of any private corporation." This prohibition was not removed until 1933 when the Constitution was amended to empower the Legislature to authorize appropriate investments by fiduciaries. As stated in Commonwealth v. McConnell, 226 Pa. 244, 247: "The doctrine thus firmly established in this state prohibits a trustee from investing the estate of his cestui que trust in the bonds or stocks of a private corporation." Accord: Maroney's Estate, 311 Pa. 336.

Therefore, in 1889, when the instant will was executed, trustees were prohibited by fundamental law from investing in stocks. Hence, the clause prohibiting investment in "capital stocks of corporations and obligations not accompanied with reasonable securities" was meaningless surplusage, unless it applied only to nonlegal investments. Moreover, the phrase: "obligations not accompanied by reasonable securities," if strictly applied, would hopelessly limit the legal list.

The security of a government bond is the faith and credit of the governmental body, grounded upon its power to tax and thereby acquire the funds with which to pay the obligation. Consequently, a strict and technical construction of the controversial clause of testator's will would exclude investment even in bonds of the United States, or a State, or a municipality, from the class of "obligations not accompanied with reasonable securities."

If this construction were adopted, the trustees would appear to be restricted to investment in mortgages on privately-owned real estate, bonds of certain electric utility companies and a few other companies, and possibly ground rents. Such a result would be absurd. The bonds of the United States have the same *security* as paper money. Both are based on the promise of the United States to pay. The only difference is the time when due, viz., on demand or at a specified future date. Moreover, such interpretation would make meaningless the earlier phrase, "to invest . . . the capital thereof so as to make same as productive as reasonably can be." Finally, testator was patently not a disbeliever in common stocks. Per contra, at his death he owned 86,746 shares of stock of 23 corporations, covering a wide range of industrials and railroads. The only logical, sensible and meaningful interpretation of this will and testator's manifold intention is that the restrictive clause in question referred to nonlegal investments, as defined when the clause was written.

It follows that the critical language in the instant will is different in crucial aspects from the language in Kelsey Estate, Jeffries Estate, Saunders Estate, and Brown Estate, supra; that the language in the instant will does not constitute a specific restriction against investment in legal investments provided in the Fiduciaries Investment Act of 1949, as amended; and that the adjudication of Judge Bolger, the first opinion of this

court en banc, and the adjudications of Judge Lefever and of Judge Shoyer in this case were correct.

We recognize that these adjudications and decision of this court are not res adjudicata of the present issue nor "the law of the case" since these doctrines apply only to decisions of an appellate court: Brown Estate, supra, 408 Pa. 214, at pages 229 to 231.

There are strongly persuasive reasons, however, for us to follow our earlier adjudications and decision. As noted above, testator expressly directed his trustees to make the trust as productive as possible, and authorized retention of decedent-owned investments. Pursuant to these directions, trustees filed their nineteenth account for the purpose of obtaining a determination by this court of their investment powers. Thereafter, relying upon the adjudication of Judge Bolger and the unanimous decision of this court, which relied upon many similar lower court decisions, trustees sold most of their common stocks for $1,153,206.53. This, as above stated, represented 17½ per cent of the portfolio. Moreover, this included a sale for $844,896 of 1,300 shares of the Finance Company of Pennsylvania, a quasi-holding company, which owned a diversified portfolio of common and preferred stocks, and, therefore, constituted an important hedge against inflation for the instant trust estate. Furthermore, these sales resulted in a substantial reduction of trust corpus by distribution through apportionment from principal to income and payment of federal capital gains taxes of a total of $528,000. In addition, a further reduction of principal, through additional sizeable capital gains taxes, will occur if the final decision in this case requires the trustees to sell most of the stocks remaining.

Finally, if it should now be decided that the trustees do not have the power to reinvest in legal investments, the trustees would be precluded from returning to the status quo of their portfolio at the time of our prior

decision. This would be a great hardship on both income beneficiaries and remaindermen, as it would drastically curtail the scope of investment and would prohibit trustees from reinstating in the account the very stocks in which testator had shown his confidence by retaining them in his portfolio at his death. The guardian and trustee ad litem conceded this in his brief as follows: "The trustees are persons of skill and experience in the managing of trusts and investments. They have been eminently successful in their selections of common stock and other investments for this trust. They will be severely hampered, and their opportunities to achieve further growth of trust principal will be strictly limited, if the right to invest in common and preferred stock is withdrawn."

It follows that this case is sui generis. Hence, this court should not reach a decision with such untoward consequences, unless the language in testator's investment powers, viewed in the light of recent Supreme Court decisions, clearly, precisely and indubitably requires that result. It is our opinion that it does not. Our prior adjudications and decision noted the ambiguity and lack of clarity in testator's language. At best, read as a whole, Item Fifth of testator's will is ambiguous and subject to doubt. However, it does not constitute "an express restriction to the contrary" within section 18 of the 1949 Act. Consequently, trustees have power to invest in legal investments as defined in that statute.

Finally, it is noteworthy that all 41 of the beneficiaries, both income beneficiaries and remaindermen, who are now *sui juris*, have requested the trustees to invest in legal investments and have released them from any liability for so doing. It is true that they cannot bind the 56 minors or the unborn or unascertained interests. However, this indicates the views of the adult beneficiaries, many of whom are parents of the

minors, and their desire and need for the interpretation of the trust powers which we have reached.

Accordingly, for all of the foregoing reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.

President Judge Klein has filed a dissenting opinion, in which Judge Burke joins.

*Dissenting Opinion*

KLEIN, P. J.,

I have always been deeply impressed by Justice, later Chief Justice Schaffer's admonition in Nirdlinger's Estate (No. 2), 327 Pa. 171, 173 (1937), that life tenants, who are usually the primary objects of testator's bounty, should not be compelled to "starve" while the ultimate remainderman "feast." My experience has convinced me that Justice Schaffer's views have become increasingly important over the past 30 years. Too often the intention of the testator is frustated by inflationary changes in our economy which have greatly decreased the purchasing power of the dollar. In addition, the lower rates of income earned by many trust estates and the impact of newly created and unforseen taxes of Federal, State and local governments have resulted in drastically reduced standards of living for many income beneficiaries. As a result, I have tried to construe trust instruments in a manner which would give favored life tenants the maximum benefits possible. I would therefore like to agree with the views of my respected colleagues in the present case. I cannot, however, because of the clear and unequivocal language used by the testator.

Regardless of our personal views and any previous decisions made by us, we are firmly bound by the decisions of our Supreme Court. The testator, despite the very broad investment powers given by him to the trustees, specifically excluded from the investments they could make "the Capital Stocks of Corporations

and obligations not accompanied with reasonable securities." I am therefore of the opinion that the present case is squarely controlled by Jeffries Estate, 393 Pa. 523 (1958). See also: Kelsey Estate, 393 Pa. 513 (1958); and Brown Estate, 408 Pa. 214 (1962). Accordingly, I would, although regretfully, sustain the exceptions filed by the guardian and trustee ad litem.

BURKE, J., joins in this dissent.