## Mercer Estate

*Henry D. Paxson,* for accountant.
*James W. Sutton, Jr., Assistant Attorney General,* for Commonwealth as parens patriae.
*Harriet M. Mims,* for beneficiary.

SATTERTHWAITE, *P. J.*, June 25, 1974—The second account of Girard Trust Bank (formerly known as Girard Trust Corn Exchange Bank, previously known as Girard Trust Company) trustee for The Bucks County Historical Society under the will of Henry C. Mercer, deceased, was presented to the court for audit, confirmation and distribution of ascertained balances on October 1, 1973, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record. The accounting was occasioned by the lapse of time since the prior accounting in 1943, and also to obtain a ruling by the court as to the investment powers of accountant, as hereinafter discussed more at length.

Said account has been examined and audited by the court. Balances for distribution shown thereby include principal in the amount of $110,321.22, composed of invested securities carried at an

aggregate of $109,055.21 and cash of $1,266.01; and income in the amount of $2,845.84 in cash. Said respective balances for distribution appear to have been correctly computed and stated on the accounting filed. It should be noted that the income account is partial only, having been stated since February 24, 1973 only.

No additional receipts or disbursements since the accountings were suggested.

The petition for adjudication suggested two questions for adjudication: (1) whether or not accountant under the testamentary provisions properly invested in investments authorized by the statute relating to so-called legal investments, insofar as such legislation would authorize investments in corporate preferred stocks; and (2) whether or not permission should be given the beneficiary, Bucks County Historical Society, to loan artifacts from its collection to persons or institutions outside the museum of said society, notwithstanding a prohibition of such practice by a clause of the will of the within decedent under penalty of forfeiture of the benefits of the within trust. While a petition by the Bucks County Historical Society seeking the permission so suggested under (2), supra, was in fact filed, the same was subsequently withdrawn by written motion filed and approved by the court on March 18, 1974.

At the call of the audit list on October 1, 1973, the auditing judge announced his disinclination to render a moot or advisory opinion on the investment powers question and that he would refuse to act thereon in the absence of an adversary position taken by some party in interest. Counsel for accountant suggested that the audit be deferred or

suspended pending the possible filing of objections by the Attorney General as parens patriae, and the auditing judge acceded to this request.

On February 26, 1974, the Attorney General, through James W. Sutton, Assistant Attorney General, did file written objections, whereby an adversary and actual challenge was made to certain transactions shown in the within accounting. Specifically, objection was made to principal credits therein claimed, aggregating $399.46, being the total of losses sustained by accountant by reason of its purchase in 1947 and 1948 of shares of preferred stock of four different corporations and its sale of the same in 1948. The account also disclosed gains on the sale in 1948 of shares of preferred stock of two other corporations, over the cost thereof in 1947 and 1948, such gains aggregating $375.55.

Two questions raised by the Attorney General's objections were duly argued before the auditing judge on March 18, 1974: (1) was accountant authorized to make the preferred stock investments in question in 1947 and 1948? (2) if not and, if accountant is subject to surcharge therefor, may the losses be offset by the gains?

The relevant legislative provisions to be considered are section 41, paragraph (a)1, subsections (16), (17)(b) and (17)(e) of the Fiduciaries Act of 1917, as added or amended by sections 13 and 14, respectively, of the Act of June 27, 1947, P.L. 1080, effective upon enactment, 20 PS 801 (16), (17)(b) and (17)(e). Subsection (16), as so added, for the first time included preferred stocks among legal investments for fiduciaries (subject to limitations, conditions and other qualifications which were understood to have been met, with respect to the instant investments,

and which are not at issue herein). Subsection (17)(b), as so amended, provided as follows:

"Subsection (17). General Provisions.
". . .
"(b) Nothing contained in this section shall be construed to authorize any fiduciary to make any investment contrary to the directions in regard to investments contained in the will, deed or other instrument creating the trust in his care, nor to limit or restrict the authority conferred upon any such fiduciary with respect to investments by any such instrument, but the terms 'legal investment' or 'authorized investment' or words of similar import as used in such instrument, shall be taken to mean any investment permitted under the terms of this section."

Subsection (17)(e), as so added, provided as follows:

"(e) The provisions of this section shall govern the investments of fiduciaries acting under wills, agreements, court orders and other instruments now existing, as well as those which are made or come into legal effect hereafter."

(Comparable provisions of subsequent statutes on the subject are as follows: subsection (16) authorizing investments in preferred stocks was replaced by the somewhat similar provisions of section 9(a) of the Fiduciaries Investment Act of May 26, 1949, P.L. 1828, as variously amended, 20 PS §821.9 (now section 7310(a) of the Probate, Estates and Fiduciaries Code of June 30, 1972 [no. 164]). Subsection (17)(b) insofar as it relates to the effect of directions by the testator or settlor would seem to have been replaced by sections 2 and 18 of the Fiduciaries Investment Act of 1949, as amended,

20 PS §§821.2 and 821.18 (now sections 7302 and 7319 of the Probate, Estates and Fiduciaries Code). Subsection (17)(e) does not appear to have a counterpart in the later statutory provisions. It is important to keep in mind that the within decision is controlled by the Act of 1947, supra, and does not necessarily reflect the application and effect of the subsequent enactments.)

The preferred stock investments here in question would clearly have been authorized by subsection (16) unless, in the words of subsection (17)(b), such an investment was "contrary to the directions in regard to investments" in Dr. Mercer's will. By the same statutory clause, the testamentary use of the phrase "legal investment" or words of like import was required to be construed as extending to any investment (and hence including preferred stocks) authorized by law; moreover, such rules of construction, under subsection (17)(e), were to be applicable to judge the propriety of investments of fiduciaries acting under pre-existing trust instruments.

The significant provisions of the Mercer will, executed in 1925 and operative upon probate after his death in 1930, are those contained in the bequest of $130,000. to accountant in trust to pay over the income to the Bucks County Historical Society for the several uses and purposes thereof as set out at length. The exact language of this trust clause was:

"IN TRUST, however, to invest the same *at interest in legal securities* and to collect the *interest or income* derived therefrom and pay over the same to the said Bucks County Historical Society annually and forever, . . ." (Emphasis supplied.)

By another portion of the will, decedent created an entirely separate trust for uses relating to his home known as Fonthill, funding the same with a bequest of $100,000., likewise to the within accountant as trustee,

"IN TRUST, nevertheless, to invest the same and keep the same invested *in legal securities;* to collect the *dividends and income* thereof, and after deducting all proper charges, to pay the balance of said income, semi-annually to the [Fonthill] trustees above named, . . ." (Emphasis supplied.)

The Attorney General's objections to the preferred stock investments in this case are predicated upon two contentions: first, that the purportedly retroactive enlargement of the area of legal investments by the Act of 1947 so as to permit preferred stock investments by trustees under pre-1947 trust instruments is unconstitutional, and, second, that in any event Dr. Mercer's direction to invest "at interest" precluded any investment in other than fixed-return securities.

The auditing judge is not convinced that the statutes defining legal investments, as they are changed in the wisdom of the legislature from time to time, may not constitutionally be applicable with respect to investments made pursuant thereto even though by trustees acting under earlier trust instruments, unless, of course, such instruments provide otherwise. While the question was mooted and left undecided by the Supreme Court in Kelsey Estate, 393 Pa. 513, 517 (1958), and in Brown Estate, 408 Pa. 214, 227 (1962), the lower court opinions in each of these cases (Kelsey Estate, 11 D. & C. 2d 757, 762 [1957]; Brown Trust, 3 Fiduc. Rep. 262, 269, 85 D. & C. 452, 457 [1953] (involv-

ing a prior audit in the same estate) clearly decided the propriety of giving such effect to the statutory modifications, and the appellate court made not the slightest indication that it would rule to the contrary. See also Henry Estate, 413 Pa. 478, 485-486 (1964), holding, under the extensive precedents therein collected, that legal investments by trustees under a will dated in 1913 of a decedent who died in 1930 would be those which were legal investments at the time they were purchased or made. Compare the analogous problem and the Supreme Court's overruling of somewhat similar constitutional objections to the application to pre-existing trust estates of statutory provisions relating to allocation of principal and income, in Catherwood Trust, 405 Pa. 61 (1961); Norvell Estate, 415 Pa. 427 (1964); and Arrott Estate, 421 Pa. 275 (1966).

In the instant case, the auditing judge believes that the application of legal investment standards as prescribed and enlarged by the Act of 1947, supra, is not constitutionally precluded with respect to investments by accountant in 1947 and 1948 even though the trustee was acting under a trust created in 1930. The only real question, then, is whether or not the preferred stock investments so made, being authorized by the 1947 statute, were "contrary to the directions" of the Mercer will.

It is now well settled, apparently contrary to the decisions of this court in Middleton Estate (No. 2), 5 Bucks 184, 5 Fiduc. Rep. 617, 8 D. & C. 2d 133 (1955); and in Middleton Estate (No. 3), 9 Bucks 236, 10 Fiduc. Rep. 151, 21 D. & C. 2d 18 (1959), that an authorization of particular types of investments by a trust document "as hereinafter provided," followed by an enumeration of specific

forms of securities, amounts to "an express restriction to the contrary" and overrides the general law-given power to invest in "legals" otherwise available to fiduciaries under section 18 of the Fiduciaries Investment Act of 1949 (now section 7319 of the PEF Code): Brown Estate, 408 Pa. 214 (1962); see Close Estate, 16 Fiduc. Rep. 513, 40 D. & C. 2d 128, 135 (1966). It may be assumed that the Brown rationale should be applied to the not dissimilar contrary-to-the-directions-of-the-trust-instrument clause of the 1947 statute, supra, which is applicable in the instant case. Brown is not dispositive of this case, however, as the threshold (and controlling) problem here is not one of application as a matter of law of the Brown rule to clear and unquestioned testamentary provisions, but rather it is primarily a problem of construction and interpretation of the very meaning intended by the testamentary language itself.

Dr. Mercer, in the provisions for both the within Historical Society trust and the Fonthill trust, authorized investments only in "legal securities," in both, he directed the collection of "income" therefrom and payment of the same to the respective beneficiaries. Had he stopped there, no problem would have arisen, and in the opinion of the auditing judge, any investment within the statutory definition of "legals" from time to time throughout the terms of these perpetual trust would have been proper. The word "securities" in not confined to bonds or similar interest-bearing investments; in an appropriate context it may include shares of stock: McGraw's Estate, 337 Pa. 93 (1940); Wood's Estate, 130 Pa. Superior Ct. 397 (1938).

The mere fact that Dr. Mercer spoke of the specified legal investments as being "at interest" or

referred to the collection and disbursement of "interest or income" does not mandate fixed income securities as contrasted to other types of "legals" under the 1947 statute. His use of the word "interest" in these connections was not in the technical sense of limiting investments to "interest-bearing" securities (as was the case in the distinguishable decisions in Cope Estate, 351 Pa. 514 [1945]; Finley Estate, 20 Fiduc. Rep. 203, 48 D. & C. 2d 661 [1970]). Rather, it would seem logical that he used the words "income" and "interest" synonymously and interchangeably in referring generically to "legals," a conclusion particularly justified by the historical fact that in 1925 when the will was written only interest-bearing obligations (and ground rents) were contemplated by the legal investment statute. Compare Gillingham Estate, 353 Pa. 493 (1946); Kisterbock Estate, 73 D. & C. 94 (1950). His lack of precision in this phraseology is further pointed up by his parallel use, in the Fonthill trust, of the words *"dividends and income,"* a reference again to the product of "legal securities" and used in a context where the word "dividends" could not have been intended in its technical and narrow meaning of equity distributions since corporate stocks were not then within the statutory ambit of legal investments.

The provisions of the Mercer will would seem to be on all fours with the applicable provisions of the instrument creating the perpetual charitable trust involved in Stewart Memorial Fund, 22 Fiduc. Rep. 212 (Adams Co., 1971), insofar as the present question is concerned. The relevant language of the investment clause there was to invest "in any securities and investments permissible by law for investment of trust funds, *and at the best rate of*

*interest* which in the opinion of said trustee can be obtained with safety, provided, however, that said *interest rate* shall be not less than five per cent (5%)." (Emphasis supplied.)

Judge Kohler held: (1) that authorized investments under this language included those provided for by law from time to time and were not confined to "legals" as of the time of creation of the trust; (2) that, notwithstanding the references to "interest," the trustee was not confined to bonds or other fixed income securities; and (3) that the five-percent limitation should be disregarded. On the second point which is of present significance, he stated, 22 Fiduc. Rep. at 216:

"When Dr. Stewart executed the original trust in 1926, the governing statute for legal trust investments was Section 41 (a) of the Fiduciaries Act of 1917, as amended. Such investments included 'credit' obligations of the United States, the Commonwealth and its municipal subdivisions, bonds of individuals secured by real estate, and ground rents. The latter were so rarely used in this area they may be ignored in ascertaining the settlor's intention. It may be noted that such investments produced income in the form of 'interest'. The income from all such investments was denominated 'interest' and, we believe, it was only for that reason that the settlor used the word. Thus, we hold that the word 'interest,' as used by the settlor, may be construed as 'income.' As the settlor used the word in the investment provisions of the trust it is synonymous with income."

For the foregoing reasons, the auditing judge concludes that the 1947 and 1948 preferred stock purchases by accountant were authorized by law

and not precluded by Dr. Mercer's will. The Attorney General's objections to the losses sustained on the sale of certain thereof are accordingly overruled and the surcharges requested by reason thereof denied and refused.

No other questions remaining necessary for adjudication were stated in the petition for adjudication, nor were any apparent to the court from the record.

The account is hereby confirmed.

## ORDER

And now, June 25, 1974, the within adjudication is directed to be filed and is hereby confirmed nisi. [Exceptions filed and withdrawn.]