## Close Estate

*Rowland C. Evans, Jr.*, for accountants.

*Abraham J. Brem Levy*, guardian and trustee ad litem.

*Paul Maloney, James P. Junkin*, and *Clark, Spahr, Eichman & Yardley*, for legatees.

## ADJUDICATION

BOLGER, J., July 13, 1965. — Decedent died February 6, 1914. This trust arose under his will dated January 5, 1914, a copy of which is annexed.

Testator gave his residuary estate in trust to pay certain annuities to his grand-nephew, Erving W. Close, his sister, Josephine B. Moore, and Margaret A. Dushane, as well as his sister-in-law, Sarah R. Close.

All of the annuitants are now deceased excepting Erving W. Close, who is entitled to all of the income, and upon his death, principal is to be paid to his children living at the time of his death and per stirpes to the then living issue of Edwin G. Close, who are Edwin George Close, 2nd, and Erving Wade Close, Jr. There also are minor children of the two children for whose estates Abraham J. Brem Levy, Esq., was appointed guardian ad litem and trustee ad litem for all unborn

and unascertained persons having a possible interest in remainder.

This account has been filed because of a dispute which has arisen between Erving Close and his cotrustee, Fidelity-Philadelphia Trust Company.

In 1952, Erving Close attempted to terminate this trust. The court en banc refused his petition, but the account was awarded back to Judge Hunter to construe the investment clause, which reads as follows:

"ITEM. The residue of my estate shall be held and invested by my Executors and Trustees in the manner following and upon the following Trusts: They shall not be obliged to sell any of my investments but may retain the same as long as they may deem proper and sell them in whole or in part when and as soon in their judgment it may be deemed advisable. They may sell and re-sell any investment which they themselves may make when and as often as in their judgment it may be deemed advisable.

"They shall invest and re-invest the funds which may at any time come into their hands in well secured first Mortgages secured on real estate in the City of Philadelphia or in well secured Ground Rents issuing out of real estate in said City or in two story brick houses clear of incumbrance in good localities in said City or in Bonds of the United States, State of Pennsylvania or City of Philadelphia".

At that time, Judge Hunter, by supplemental adjudication dated June 3, 1954, determined that the direction to invest in the enumerated securities did not restrict the trustees from investing in common stocks which were legal investments: Close Estate, 83 D. & C. 136. In 1960, by a writing signed by Erving W. Close and his two adult sons, a copy of which is annexed, the party signatory indemnified the trustees against all claims based on the ground that the will does not authorize legal investments.

The report of the guardian and trustee ad litem is most complete in its review of Jeffries Estate, 393 Pa. 523; Kelsey Estate, 393 Pa. 513 and Saunders Estate, 393 Pa. 527, in all of which cases the Supreme Court found restrictions against investments in stocks or bonds even though they were legal investments. The report then considers Brown Estate, 408 Pa. 214. It notes the distinct similarity between the direction concerning investments in Brown Estate and the present will of Charles W. Close. In Brown Estate, supra, the Supreme Court, in overruling the lower court, found that testator's intention is the polestar in construction and (page 220), citing Kelsey Estate: " 'Courts cannot, even when aided by hindsight and the ingenuity of counsel, rewrite a settlor's deed or a testator's will, or distort or torture his language or the language of a statute relating thereto, in order to attain what we believe is beneficial and wise, or even what we believe settlor would or should have provided if he had possessed a knowledge of all presently existing circumstances' ".

Counsel for accountants has taken the position that the guardian and trustee ad litem is under obligation to consider solely the best interests of the persons he represents. This is clearly his duty, but he must do so within the limitations affixed by testator as determined by judicial decisions. It should be noted that in Brown Estate, the successful appellant was the guardian and trustee ad litem.

The report further notes that there were certain securities which he is convinced were owned by testator during his lifetime, and a reference to the investment clause in the will shows a right to retain securities. It is, therefore, his conclusion that of the common stocks, 328 shares of Philadelphia Electric Company and 131 shares of Provident National Bank may properly be retained. It is also his conclusion that all other common

and preferred stocks and bonds must be liquidated as soon as it is possible and to do so with the least amount of harm to the estate or attrition by way of capital gains taxes which may become assessed against principal.

The auditing judge finds that this case is ruled by Brown Estate and, therefore, he approves the report of the guardian and trustee ad litem as well as the compensation he has requested in the sum of $750.

There was no objection to the account, which shows a balance of principal of $194,402.79, which, composed as indicated, subject to payment to Abraham J. Brem Levy, Esq., of $750 compensation for his services, and also subject to payment to counsel for the accountants of $200 additional compensation, is awarded to accountants in trust for the uses and purposes set forth in the will subject to the directions contained in this adjudication.

The account shows a balance of income of $5,889.46, which, together with any additional income received since the filing of the account, subject to payments heretofore properly made on account of distribution as shown therein, is awarded to Erving W. Close.

Leave is hereby granted to accountants to make all necessary transfers and assignments.

A certificate of the official examiner as to his examination of the assets composing the fund awarded to be retained in trust will be submitted to me.

And now, July 13, 1965, the account is confirmed nisi.

### SUPPLEMENTAL ADJUDICATION

BOLGER, J., April 27, 1966.—Exceptions were filed to my adjudication of July 13, 1965, in this estate. After argument before the court en banc, exceptions were dismissed pro forma and the matter was referred back to me at my request for further consideration.

The problem presented by this case is the extent of the investment powers of the trustees. The investment clause of the will which creates this trust is as follows:

"ITEM. The residue of my estate shall be held and invested by my Executors and Trustees in the manner following and upon the following Trusts: They shall not be obliged to sell any of my investments but may retain the same as long as they may deem proper and sell them in whole or in part when and as soon in their judgment it may be deemed advisable. They may sell and re-sell any investment which they themselves may make and when and as often as in their judgment it may be deemed advisable. They shall invest and re-invest the funds which may at any time come into their hands in well secured first Mortgages secured on real estate in the City of Philadelphia or in well secured Ground Rents issuing out of real estate in said City or in two story brick houses clear of incumbrance in good localities in said City or in Bonds of the United States, State of Pennsylvania or City of Philadelphia".

I ruled in my adjudication, in accordance with Brown Estate, 408 Pa. 214 (1962), that these powers are an express restriction within the meaning of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828. At a further hearing held in this matter and after discussion with counsel for accountants and exceptants, I am unable to reach any other conclusion but that my prior adjudication was correct and proper. As stated by the Supreme Court, in Brown Estate, supra, at 229:

"Today life tenants are like political divisions of Government—they want and need more money. There are not many in the Legislature or in the Courts to champion or protect the interests of unknown remaindermen and even fewer who still believe that a man who works hard all his adult life has a right to will and condition or limit his own estate as he desires. The temptation for all of us is to be human and favor the

known over the unknown and the dead, even if we have to change a testator's will or intent (for the worthy objective of benefiting the primary objects of testator's bounty) in order to do so. But this is not the law.

"It is clear that testator intended to prohibit an investment in common or preferred stock. Since we hold that the restrictive investment clause in Brown's Will is an express restriction within the meaning of the Fiduciaries Investment Act of 1949, as amended, it is unnecessary to pass upon the constitutionality of the Act so far as concerns trusts which were created prior thereto".

It is the duty of this court to keep faith with the dead; it is, as it should be, the dead hand of testator which controls. His directions limit the investment powers of the trustees, and they must be honored. Therefore, borrowing the phrase from Brown v. Board of Education, 347 U. S. 483 (1954), I direct trustees to liquidate any investments not authorized by the will "with all deliberate speed".

Because of the history of this case, and in order to endeavor to facilitate an orderly liquidation without undue loss on the present investments which would necessarily be occasioned by an order of immediate divestiture of the nonconforming assets, it is left to the discretion of trustees having due regard for the preservation of both principal and income to determine what the method and schedule of liquidation and reinvestment ordered herein is to be. Trustees are hereby directed to consult the guardian ad litem with respect to liquidation of all objectionable investments. The guardian shall report to the auditing judge if he is not satisfied that the liquidation is proceeding with all deliberate speed.

Accordingly, to the foregoing extent, my adjudication of July 13, 1965, is amended and supplemented, but in all other respects, same shall remain in full force and effect.

OPINION SUR EXCEPTIONS

SHOYER, J., September 14, 1966.—These exceptions by the individual cotrustee, who is also the sole life tenant, are joined in by his two adult sons, who will receive the remainder provided they survive their father.

This, the fourth account, was filed at the insistence of the corporate trustee which is concerned lest previous rulings of this court in 1953 which broadly construed the investment powers of the trustees should now be held in conflict with the restrictions expressed and imposed by our Supreme Court in Brown Estate, 408 Pa. 214 (1962).

When exceptions to the adjudication of the third account were before our court en banc in 1952, need for a broadening of the investment powers was stressed due to the difficulty and cost of obtaining suitable investments in mortgages, ground rents and real estate mentioned by testator. We suggested that possibly the trustees had adopted an unnecessarily restricted interpretation of their testamentary powers of investment and referred the matter back to the auditing judge in order that he might construe the investment clause in the will. Judge Hunter, the then auditing judge, subsequently held that there was "no express restriction to the contrary" within the meaning of section 18 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828, 20 PS §821.18, and that the trustees were empowered by the will to invest in common stocks, and other securities authorized by that statute. He said, in Close Estate, 83 D. & C. 136, 148, 3 Fiduc. Rep. 113, 124: "The instant will contains no express restriction, and is to be construed as expressing testator's preference for the investments he enumerates, and not as forbidding other legal investments.

"The common stocks bought by the trustees, being legal investments within the definition of the statute, are approved".

No exceptions to Judge Hunter's holding were taken, although the life tenant later had reargument before us on his right to terminate the trust.

Judge Bolger, the present auditing judge, has decided that the broad discretion which this court granted the trustees in adjudicating the third account is in conflict with the rulings laid down in Brown Estate, and that the investment powers must now be limited to the investments expressly authorized the trustees by the will, viz: "They shall not be obliged to sell any of my investments but may retain the same as long as they may deem proper and sell them in whole or in part when and as soon in their judgment it may be deemed advisable. They may sell and resell any investments which they themselves may make when and as often as in their judgment it may be deemed advisable. They shall invest and reinvest the funds which may at any time come into their hands in well secured first Mortgages secured on real estate in the City of Philadelphia or in well secured Ground Rents issuing out of Real Estate in said City or in Two story brick houses clear of incumbrance in good localities in said City or in Bonds of the United States, State of Pennsylvania or the City of Philadelphia".

In his supplemental adjudication, the learned auditing judge has directed "the trustees to liquidate any investments not authorized by the will 'with all deliberate speed'.

". . . The trustees are hereby directed to consult the guardian ad litem with respect to liquidation of all objectionable investments. The guardian ad litem shall report to the auditing judge if he is not satisfied that the liquidation is proceeding with all deliberate speed".

Serious differences in the interpretation of this order have developed among the cotrustees and the guardian ad litem. The corporate fiduciary is apparently desir-

ous of an early liquidation, while the individual trustee is inclined to postpone indefinitely the unwelcome conversion. We are informed by counsel that, unfortunately and regrettably, misunderstanding and confusion exist.

Realizing full well that the adjudication of our most learned and late lamented colleague, Judge Hunter, was the sine qua non that led the trustees to invest in securities outside those expressly mentioned in the will, we are impelled to adopt all measures necessary to protect the trustees and beneficiaries from losses attendant upon a reversal of our earlier decision. The guardian ad litem, in his report to Judge Hunter in connection with the third accounting, made a comprehensive survey of the mortgage situation in Philadelphia. His report gave strong support to the then contention of the trustees that sound investments in mortgages, ground rents and real estate were exceedingly hard to find. Currently, the situation is much different. The war in Viet Nam and the efforts of the Federal administration to restrain inflation have caused a "tight money" market. The Federal Reserve Board has raised the prime interest rate (its reserve requirements against time deposits in member banks) from 5 percent to the statutory limit of 6 percent as an anti-inflation move. So scarce have funds for mortgages become [1] that the Federal government is presently making three billion dollars, (N. B.—4.76 billion as finally enacted), specially available to home owners

---

[1] Reliable sources have informed us that mortgage lenders are currently making a service charge or finder's fee (euphemistically called "points") to borrowers of as much as 6 percent to 12 percent. One investment officer reported an instance of a charge as high as 19 percent, which, when added to the transfer tax of 1 percent meant that the borrower received less than 80 percent of the mortgage money which he needed to finance his purchase of a home at the stated sales price.

and buyers through its Federal lending agencies—a remedy which many predict will supply only minimal benefits.

We believe that the trustees should be allowed a period of at least five years [2]—less, perhaps, in connection with the preferred stocks—in which to plan and execute an orderly conversion of those securities which lack testator's express approval. If, at the end of that period, some of these securities still remain in the trust portfolio, the trustees are to file another account and give evidence to the court of the reasons for their delay. No supervision by the guardian-trustee ad litem is required, and he is discharged from all further responsibility in connection with this accounting.

With this modification of the supplemental adjudi-

---

[2] The learned auditing judge stated that he was "borrowing" the phrase "with all deliberate speed" from Brown v. Board of Education of Topeka, 349 U. S. 294 (1955). A much earlier use of this cryptic expression is noted in "The Hound of Heaven" by the English poet, Francis Thompson (1859-1907), as follows:

". . . Still with unhurrying chase,
And unperturbèd pace,
Deliberate speed, majestic instancy
Came on the following Feet,
And a Voice above their beat—
'Naught shelters thee, who wilt not shelter me' ".

Since 1955, various Federal courts, when prodded by advocates in the Civil Rights movement to accelerate school integration, have been anything but unanimous in their construction of "deliberate speed". See Randall v. Sumter School District, Sumter, So. Carolina, 232 Fed. Supp. 786, 788 (1964); Calhoun v. Members of Board of Education, City of Atlanta, 188 Fed. Supp. 401, 404 (1959). The Supreme Court, when asked to clarify its own decree in Watson v. City of Memphis, 373 U. S. 526 (1963), stated that the concept of "deliberate speed" would not countenance "indefinite delay", but refused to rule unequivocally that eight years was too long a period. After careful consideration of all the circumstances connected with the past and present litigation in this estate, we prefer to use a more definite time measure than that adopted by the learned auditing judge.

cation, the exceptions thereto are dismissed, and the original and supplemental adjudications are now confirmed absolutely.